## BALTIMORE & OHIO SOUTHWESTERN RAILROAD COMPANY *v.* SETTLE ET AL., PARTNERS UNDER THE FIRM NAME OF W. H. SETTLE & CO.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 83. Argued October 20, 1922.—Decided November 13, 1922.

1. Whether a shipment of goods is interstate, and is therefore subject to the rates provided by the carrier's interstate tariff, depends upon the essential character of the movement, and this character is not necessarily determined by the contract between shipper and carrier. P. 169.

2. Neither through billing, uninterrupted movement, continuous possession by the carrier nor unbroken bulk is an essential of interstate shipment, though these are common incidents of through shipment, and their presence or absence may be important evidence of the intention with which a shipment was made, when that question is in issue. P. 171.

3. Where the shipper bills his goods from one State to a point in another, paying the interstate rate, and, after receiving delivery of the loaded cars at the latter point, reships them within a few days to another point in the second State on local bills, paying the local freight rate, intending throughout to move them to this destination from the point of origin and interrupting the movement only that he may take advantage of a difference in his favor between the through rate and the sum of those paid, his intention, thus carried out, determines, as a matter of law, the essential nature of the entire movement as a movement in interstate commerce. P. 171.

4. In such a case the through interstate rate is the only lawful rate; and the misuse of the intermediate rates unjustly depletes the carrier's revenues and opens the door to discrimination, contrary to the Act to Regulate Commerce. P. 172.

272 Fed. 675, reversed

ERROR to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court adverse to the Railroad Company in its action to recover the

difference between the amount due on interstate shipment of lumber measured by the through interstate tariff, and a less amount paid under a combination of interstate and local rates.   See 272 Fed. 675; 249 Fed. 913.

*Mr. George Hoadly,* with whom *Mr. Judson Harmon* and *Mr. Edward Colston* were on the brief, for plaintiff in error.

*Mr. Harry C. Barnes,* for defendants in error, submitted.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Baltimore & Ohio Southwestern Railroad has freight stations at Oakley and at Madisonville, both within the city limits of Cincinnati.   It duly published, in connection with other carriers, interstate carload rates on lumber from southern points to Oakley and to Madisonville.   It also duly published intrastate carload rates from Oakley to Madisonville.   The interstate rates to Madisonville were higher than the interstate rates to Oakley plus the local rate from Oakley to Madisonville. W. H. Settle & Co., who are lumber dealers, with a place of business at Madisonville, had lumber shipped from the South to Oakley; paid the freight to that point; received at that station delivery of the loaded cars on the team tracks or in the bulk yard; and, without unloading any of the cars, reshipped them within a few days to Madisonville on local bills of lading, paying the local freight rate.   Thus, the shippers secured transportation of the lumber to Madisonville by paying less in freight charges than would have been payable according to the interstate tariff, if the cars had been billed through to Madisonville. At the time these cars were shipped from points of origin, and continuously thereafter, it had been the intention of the shippers that the cars should go to Madisonville. They were billed to Oakley and physical possession was

taken by the shipper there, in order to get the benefit of the lower freight charges resulting from the combination of rates. The railroad insisted that, in view of this fact, the through rate to Madisonville applied; and it brought an action against the shippers, in the Federal District Court for Southern Ohio, Western Division, to recover the difference between the amounts actually received and the through rate to Madisonville. A demurrer to the petition, which set up the above facts, was overruled by the trial court; judgment entered thereon was reversed by the Circuit Court of Appeals for the Sixth Circuit; and the case was remanded to the District Court. 249 Fed. 913. The railroad then discontinued that suit and brought this one in the same court. The action was tried before a jury; the facts above stated were shown; the shippers got the verdict; and judgment entered for them was affirmed by the Circuit Court of Appeals. 272 Fed. 675. The case is here on writ of error.

It is admitted that if the reshipment from Oakley to Madisonville was part of a through interstate movement, the railroad was entitled to recover. The question is presented whether, in view of the undisputed facts, the original and continuing intention so to reship made the reshipment, as matter of law, part of a through interstate movement. The following instruction given and excepted to shows sufficiently how the question arose:

"As a matter of law, the existence of an original and continuing intention in the minds of the defendants Settle and Clephane to reship this lumber from Oakley to Madisonville, for the purpose of saving expense, is not, of itself, sufficient to convert the shipments into through shipments, if there was otherwise a good-faith delivery at Oakley. . . . If there was a good-faith delivery of this lumber at Oakley, to Settle and Clephane, the fact they always had an intention in their mind, and persevered in that intention, of reshipping it to Madisonville

for the purpose of saving money on freight, that would not necessarily constitute a through shipment in interstate commerce."

No material fact, evidential or ultimate, had been left in dispute. There was no room for any issue of good faith to be determined by the jury. Physical delivery of the cars to the shippers had been made at Oakley, after payment of the freight and other charges. The shippers had no place of business at Oakley. The delivery there was the completion of one stage in the contemplated movement to Madisonville. After a brief interval the second stage was begun under the local bill of lading. It was conceivable that the shippers might find a customer who would take the lumber at Oakley; and, in that event, the rail movement would have ended there. But that was not probable or expected; nor was it the reason for shipping to Oakley. The movement had been divided by the shippers into two stages—instead of using through billing—because they believed that by so doing they could secure transportation to Madisonville at less than the through interstate rate. Whether under the Act to Regulate Commerce lower intermediate rates can be so used in combination, is the precise question for decision.

The contention of the shippers is that the character of a movement, as intrastate or interstate, and, hence, what the applicable rate is, depends solely upon the contract of transportation entered into between shipper and carrier at the point of origin of the traffic; that when an interstate shipment reaches the destination named in this contract and, after payment of charges, delivery is taken there by the consignee, the contract for interstate transportation is ended; that any subsequent movement of the commodity is, of necessity, under a new contract with the carrier and at the published rate; and that, since this lumber came to rest at Oakley before that new movement, the reshipment from there to Madisonville (both

stations being within the State of Ohio), was an intra-state movement. This contention gives to the transportation contract an effect greater than is consistent with the purposes of the Act to Regulate Commerce. The rights of shipper against carrier are determined by law through the provisions of the tariff which are embodied in the applicable published rate. *Atchison, Topeka & Santa Fe Ry. Co.* v. *Robinson,* 233 U. S. 173; *Western Union Telegraph Co.* v. *Esteve Brothers & Co.,* 256 U. S. 566. And whether the interstate or the intrastate tariff is applicable depends upon the essential character of the movement. That the contract between shipper and carrier does not necessarily determine the character was settled by a series of cases in which the subject received much consideration. *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission,* 219 U. S. 498; *Ohio Railroad Commission* v. *Worthington,* 225 U. S. 101; *Texas & New Orleans R. R. Co.* v. *Sabine Tram Co.,* 227 U. S. 111; *Railroad Commission of Louisiana* v. *Texas & Pacific Ry. Co.,* 229 U. S. 336. And in *Baer Brothers Mercantile Co.* v. *Denver & Rio Grande R. R. Co.,* 233 U. S. 479, 490, this Court held that a carrier cannot, by separating the rate into its component parts, charging local rates and issuing local way bills, convert an interstate shipment into intrastate transportation, and thereby deprive a shipper of the benefit of an appropriate rate for a through interstate movement.

If the intention with which the shipment was made had been actually in issue, the fact that possession of the cars was taken by the shipper at Oakley and that they were not rebilled for several days, would have justified the jury in finding that it was originally the intention to end the movement at Oakley and that the rebilling to Madisonville was an afterthought. But the defendant Clephane admitted at the trial that it was intended from the beginning that the cars should go to Madisonville;

and this fact was assumed in the instructions complained of. In other words, Madisonville was at all times the destination of the cars; Oakley was to be merely an intermediate stopping place; and the original intention persisted in was carried out. That the interstate journey might end at Oakley was never more than a possibility. Under these circumstances, the intention as it was carried out determined, as matter of law, the essential nature of the movement; and hence that the movement through to Madisonville was an interstate shipment. For neither through billing, uninterrupted movement, continuous possession by the carrier, nor unbroken bulk, is an essential of a through interstate shipment. These are common incidents of a through shipment; and when the intention with which a shipment was made is in issue, the presence, or absence, of one or all of these incidents may be important evidence bearing upon that question. But where it is admitted that the shipment made to the ultimate destination had at all times been intended, these incidents are without legal significance as bearing on the character of the traffic. For instance, in many cases involving transit or reconsignment privileges in blanket territory, most or all of these incidents are absent, and yet the through interstate tariffs apply. See *Atchison, Topeka & Santa Fe Ry. Co.* v. *Harold,* 241 U. S. 371; *St. Louis Southwestern Ry. Co.* v. *United States,* 245 U. S. 136; *Central Railroad Co. of New Jersey* v. *United States,* 257 U. S. 247. Compare *Philadelphia & Reading Ry. Co.* v. *Hancock,* 253 U. S. 284.

Through rates are, ordinarily, made lower than the sum of the intermediate rates. This practice is justified, in part, on the ground that operating costs of a through movement are less than the aggregate costs of the two independent movements covering the same route. But there may be traffic or commercial conditions which compel, or justify, giving exceptionally low rates to move-

ments which are intermediate. The mere existence of such intermediate rates confers no right upon the shipper to use them in combination to defeat the applicable through rate. Here, there had been published interstate rates for the transportation from the southern points to Madisonville. For such transportation the interstate rates to Madisonville were the only lawful rates. To permit the applicable through interstate rate to be defeated by use of a combination of intermediate rates would open wide the door to unjust discrimination. And it would unjustly deplete the revenues of the carrier. The sole question, therefore, which could arise in this case was whether the movement actually entered upon at point of origin, and persisted in, was transportation of the lumber to Madisonville.

Before the decisions above referred to it was commonly assumed that, while a carrier, or one of its employees, might not act as a reconsigning agent for a shipper in order to enable him to use a combination of lower intermediate rates and thus avoid the higher charges incident to the through interstate movement, the shipper might so use the combination, provided he consigned the car to himself at the intermediate point, there paid the charges, took possession, and then reshipped the car on the local rate to its real destination.[1] The distinction made was without basis in reason. To permit carriers' revenues from interstate rates to be depleted by such misuse of a combination of intermediate rates would be no less inconsistent with the provisions and purposes of the Act to Regulate Commerce than to permit them to be used as a means of discrimination. And, since the decisions cited

[1] See *Morgan* v. *Missouri, Kansas & Texas Ry. Co.*, 12 I. C. C. 525, 528; *Wood Butter Co.* v. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.*, 16 I. C. C. 374; *Big Cañon Ranch Co.* v. *Galveston, Harrisburg & San Antonio Ry. Co.*, 20 I. C. C. 523, 526. Compare *Kurtz* v. *Pennsylvania Co.*, 16 I. C. C. 410, 413.

above were rendered, the principle there declared has been steadfastly applied by the Interstate Commerce Commission for the purpose of protecting revenues of railroads against such attacks.[1]  See also *McFadden* v. *Alabama Great·Southern R. R. Co.*, 241 Fed. 562.  The decision in *Gulf, Colorado & Santa Fe Ry. Co..v. Texas*, 204 U. S. 403, relied upon by defendants in error, is entirely consistent with these later decisions of this Court, although some expressions in the opinion are not.

The mere fact that cars received on interstate movement are reshipped by the consignee, after a brief interval, to another point, does not, of course, establish an essential continuity of movement to the latter point. The reshipment, although immediate, may be an independent intrastate movement.  The instances are many where a local shipment follows quickly upon an interstate shipment and yet is not to be deemed part of it, even though some further shipment was contemplated when the original movement began.  Shipments to and from distributing points often present this situation, if the applicable tariffs do not confer reconsignment or transit privileges.[2]  The distinction is clear between cases of that character and the one at bar, where the essential nature of

---

[1] *Kanotex Refining Co.* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 34 I. C. C. 271; 46 I. C. C. 495; *Rates on Railroad Fuel and Other Coal*, 36 I. C. C. 1, 8; *Lumber Rates from Newcastle, Cal.*, 37 I. C. C. 596, 597; *Lumber from Easton, Wash.*, 39 I..C. C. 188, 189; *Miller Brothers* v. *St. Louis & San Francisco R. R. Co.*, 42 I. C. C. 261, 262; *Memphis Merchants Exchange* v. *Illinois Central R. R. Co.*, 43 I. C. C. 378, 391; *Woolworth* v. *Union Pacific R. R. Co.*, 46 I. C. C. 437, 438; *Sugar Land Mfg. Co.* v. *Beaumont, Sour Lake & Western Ry. Co.*, 56 I. C. C. 212.

[2] *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Iowa*, 233 U. S. 334, was a case of this character.  See also *Southern Pacific Co.* v. *Arizona*, 249 U. S. 472; *Bracht* v. *San Antonio & Aransas Pass Ry. Co.*, 254 U. S. 489; *Illinois Grain to Chicago*, 40 I. C. C. 124; *Kettle River Co.* v. *Missouri Pacific Ry. Co.*, 52 I. C. C. 73, 77.  On the other

the traffic as a through movement to the point of ultimate destination is shown by the original and persisting intention of the shippers which was carried out.

*Reversed.*

Mr. Justice McReynolds dissents.

---

hand there are many instances where the grant by tariffs of extensive transit or reconsignment privileges have rendered what otherwise would be independent local movements, a part of the through interstate shipment. See *In Matter of Substitution of Tonnage at Transit Points,* 18 I. C. C. 280; *The Transit Case,* 24 I. C. C. 340.