## CHANDLER v. PENNSYLVANIA R. CO.

(District Court, E. D. Virginia. June 16, 1925.)

**Commerce ⬅33—Shipments to seaboard of potatoes intended for export, some of which were already sold for foreign delivery, held not intrastate commerce, entitled to intrastate rates.**

Shipments of potatoes from points within state to seaboard, some of which were already sold for foreign delivery, and all of which were intended for export, *held* not intrastate commerce, entitled to lesser *intrastate* rates.

At Law. Action by J. W. Chandler against the Pennsylvania Railroad Company. Judgment for defendant.

Mapp & Mapp, of Accomac, Va., for plaintiff.

Willcox, Cooke & Willcox, of Norfolk, Va., for defendant.

GRONER, District Judge. I have given careful consideration to the arguments of counsel in behalf of the respective interests, and the conclusion I have come to is that the defendant is entitled to judgment in this case on the strength of Texas & N. O. R. R. Co. v. Sabine Tram Co., 227 U. S. 111, 33 S. Ct. 229, 57 L. Ed. 442, and B. & O. S. W. R. R. v. Settle, 260 U. S. 166, 43 S. Ct. 28, 67 L. Ed. 189.

The action is brought to recover an alleged overcharge in freight on shipments of 78,716 barrels of potatoes transported from stations in Accomac and Northampton counties, Va., some to the order of the shipper at Army Base Pier, Norfolk, Va., Municipal Pier, Norfolk, Va., and Norfolk, Va.; some to Palen & Co., Army Base Pier, Norfolk, Va.; some to Palen & Co., Municipal Pier, Norfolk, Va.; and some to Southgate Forwarding, etc., Co., Southgate Terminal, Norfolk, Va. The rate charged by the railroad company was 38 cents per barrel. The intrastate rate was considerably less. The difference between the two rates on all the shipments, which moved at different times, amounted to $5,116.51.

The evidence of the plaintiff is that he was engaged in the produce business on the Eastern Shore of Virginia, and that all of

the potatoes in question were delivered to the railroad company at stations on the Eastern Shore for shipment to Norfolk, from whence it was his intention to ship them by steamer to Havana; that a considerable quantity of the potatoes had been sold before shipment, for delivery in Havana, but that a part had not been sold, but were intended to be sold upon arrival in Havana; that title was at the time of shipment, and at all times thereafter until delivery in Havana, in the plaintiff, but that his purpose and intention, at the time of the delivery of the potatoes to the railroad company, was to ship the same by the lowest rate to Havana; that the railroad company had a through rate from the points of shipment to Havana, determined by adding its own interstate rate from the point of shipment to Norfolk to the rate charged by the Seaboard Air Line or the Atlantic Coast Line Railway from Norfolk to Jacksonville, and by the Florida East Coast Railroad from Jacksonville to Key West, plus the ferry charge from Key West to Havana; that the cost of transportation via Key West was higher than the cost of transportation to Norfolk, and thence by steamer to Havana; that the steamer rates from Norfolk to Havana were a matter of contract and change from time to time. All matters of law and fact were submitted to the court, and both sides asked for judgment.

The case of Gulf, C. & S. F. Ry. Co. v. Texas, 204 U. S. 403, 27 S. Ct. 360, 51 L. Ed. 540, is cited to sustain plaintiff's position. It has, apparently, many points of similarity, and much that was said in that case by Mr. Justice Brewer would seem to be applicable here; but the Supreme Court in later cases, while not expressly overruling it, has so distinguished it as to make it, I believe, inapplicable. The shipments of grain which moved first in interstate and then in intrastate commerce in that case, the last movement being held to be intrastate commerce, notwithstanding the origin of the shipments in another state, were transported from one state to another state in accord-

ance with a contract of sale. Upon arrival, the contract both of sale and transportation was completed, the title passed, and the new owners entered into a new and independent and wholly disconnected contract for its further transportation from one point in Texas to another. Under these circumstances, the Supreme Court held that the intrastate rate applied to the last-named shipment.

In the Sabine Tram Co. Case, referred to above, Powell & Co. purchased lumber from the Tram Company for delivery f. o. b. cars at Sabine, Tex. The Tram Company was engaged in the manufacture of lumber. In accordance with the contract, they shipped their lumber to themselves at Sabine, notify Powell & Co. They had nothing to do with the lumber after its arrival and delivery to Powell & Co. at Sabine. They were not concerned with what happened to it, and had no direct knowledge that it was intended to be shipped abroad. It was, however, at all times the intention and purpose of Powell & Co., upon the arrival of the lumber at Sabine, to load it into vessels for shipment abroad. Mr. Justice McKenna, after a full review of the authorities, states the test to be the character of the commerce, rather than its "accidents," and held that, since the lumber was purchased, manufactured, and shipped to supply the demand of a foreign country, the transshipment at seaboard did not alter its true relation, nor give the transportation to seaboard a local character.

The later case of B. & O. v. Settle was a reiteration of the principle announced in the Tram Case, and there again it was held that the "intention" determined the essential nature of the movement, and where it is admitted that the shipment was made to an ultimate destination beyond the limits of the state, the movement is controlled by the interstate commerce laws.

An exception will be allowed the plaintiff, and 30 days will be allowed in which to prepare and file bills of exception. The clerk will enter up judgment for the defendant, and the record will show the usual motion on behalf of the plaintiff.