CHANDLER v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Fourth Circuit.
January 20, 1926.)

No. 2430.

1. Carriers ⚖➡30—Shipments from points within state to seaport for export are subject to interstate rates, where schedule filed with Interstate Commerce Commission applying from points of shipment to seaport included all shipments with exception of those made in intrastate commerce (Act March 2, 1889, c. 382, as amended by Transportation Act 1920, §§ 409–413 [Comp. St. Ann. Supp. 1923, § 8569]).

Where schedule of rates filed with Interstate Commerce Commission, under Act March 2, 1889, c. 382, as amended by Transportation Act 1920, §§ 409–413 (Comp. St. Ann. Supp. 1923, § 8569), applying from points within state to seaport, were general in terms, including all shipments between those points, and expressly excluding shipments made in intrastate commerce, shipments made from such ports for export, not being intrastate shipments, were subject to the general rates on file.

2. Carriers ⚖➡30—Carrier must file with interstate Commerce Commission schedule covering transportation in commerce with foreign countries as well as between several states (Transportation Act 1920, § 400[2]; Comp. St. Ann. Supp. 1923, § 8563[2]).

Under Transportation Act 1920, § 400(2), being Comp. St. Ann. Supp. 1923, § 8563(2), carrier must file with the Interstate Commerce Commission schedule of rates covering transportation in commerce with foreign countries as well as between several states.

3. Appeal and error ⬩909(1)—Circuit Court of Appeals will assume schedule filed with Interstate Commerce Commission applied to shipments moving in commerce with foreign countries as well as those in interstate commerce, in absence of limitation to that effect.

In absence of limitation in schedules filed with Interstate Commerce Commission, limiting schedules to strictly interstate shipments as distinguished from shipments in foreign commerce, Circuit Court of Appeals will assume that schedules were intended to comply with full duty imposed upon carrier, so that rates therein would apply to shipments moving in commerce with foreign countries as well as shipments in interstate commerce.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Action by J. W. Chandler against the Pennsylvania Railroad Company. Judgment for defendant (9 F.[2d] 703), and plaintiff brings error. Affirmed.

J. Brooks Mapp, of Keller, Va., and James G. Martin, of Norfolk, Va., for plaintiff in error.

Thomas H. Willcox, of Norfolk, Va. (George R. Allen and Willcox, Cooke & Willcox, of Norfolk, Va., on the brief), for defendant in error.

Before ROSE and PARKER, Circuit Judges, and WATKINS, District Judge.

PARKER, Circuit Judge. This action was brought to recover an alleged overcharge in freight on 78,716 barrels of potatoes shipped from points on the eastern shore of Virginia to Norfolk, for export to Cuba. The facts were not in dispute, and, a jury trial being waived, judgment was entered in behalf of the defendant railroad company. The sole question is one of law, that is to say, whether the rate applicable is the 31½-cent rate prescribed for intrastate shipments in the tariff filed with the Corporation Commission of Virginia, or the 38-cent rate prescribed in the tariff filed with the Interstate Commerce Commission.

The potatoes were shipped by plaintiff from stations on the line of defendant on the eastern shore of Virginia to Norfolk, for transportation by steamer to Havana. A considerable quantity of the potatoes had been sold before shipment for delivery in Havana, and the remainder were intended to be sold upon arrival there. The defendant had no rate from point of shipment to Havana by boat from Norfolk, but did have a through rate via Norfolk, Jacksonville, and Key West and thence by ferry to Havana. It had filed

with the Interstate Commerce Commission a rate from the point of shipment to Norfolk of 38 cents per barrel. The through rate was determined by adding to this 38-cent rate the rate of the Seaboard Air Line or Atlantic Coast Line from Norfolk to Jacksonville, of the Florida East Coast from Jacksonville to Key West, and the ferry charge from Key West to Havana. The steamer rates from Norfolk to Havana were paid by plaintiff, and were a matter of contract, and were changed from time to time.

The plaintiff properly concedes that these were not intrastate shipments. They were admittedly shipments in commerce with a foreign country, as to which it is conceded that the rate filed with the Interstate Commerce Commission will apply, if in fact such rate has been filed. Texas & N. O. R. Co. v. Sabine Tram Co., 33 S. Ct. 229, 227 U. S. 111, 57 L. Ed. 442; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 31 S. Ct. 279, 219 U. S. 498, 55 L. Ed. 310; B. & O. S. W. R. R. v. Settle, 43 S. Ct. 28, 260 U. S. 166, 67 L. Ed. 189. The plaintiff contends, however, that no rate governing the shipments in question has been filed with the Interstate Commerce Commission, for that there is no rate on file which purports to cover shipments from the eastern shore points to Norfolk "for export," or for shipment by boat to Cuba, that the through rate by rail via Jacksonville and Key West has no application, and that consequently there is no rate on file governing the shipments except the intrastate rate.

[1] We agree with plaintiff that the through rate via Jacksonville and Key West has no application, for the reason that the shipments were not made by that route; and, if there were no rates prescribed except the intrastate rate and the rate via Jacksonville and Key West, we should feel constrained to hold the intrastate rate applicable in the absence of any other rate to apply. But we cannot agree that there is no other rate prescribed. From the copies of schedules filed with us and made a part of the record, we find that the defendant railroad company has filed with the Interstate Commerce Commission schedules of rates applying from the points of origin of these shipments to Norfolk. These schedules are general in terms, including all shipments moving between the points on the eastern shore of Virginia and Norfolk, and excluding no class of shipments except those made in intrastate commerce, which, however, are expressly excluded. As the shipments in question are admittedly not intrastate shipments, they do

not come within the exception to the general rate, and consequently the general rate applies. It is true that the schedules do not in so many words specify shipments to Norfolk "for export," but there is nothing excluding shipments intended for export from the general rate, or applying any other or special rate to shipments of that class, and the language of the schedules filed is sufficiently broad to cover them.

[2, 3] When the duty of the carrier with respect to the filing of rates is considered, we think that there can be no doubt that these rates filed with the Interstate Commerce Commission apply to shipments intended for export as well as to shipments in commerce between the states. The Interstate Commerce Act, as amended by the Transportation Act of 1920, provides that: "(1) Every common carrier subject to the provisions of this act shall file with the Commission * * * schedules showing all the rates, fares, and charges for transportation between different points on its own route and between points on its own route and points on the route of any other carrier by railroad, by pipe line, or by water when a through route and joint rate have been established. If no joint rate over the through route has been established, the several carriers in such through route shall file, print and keep open to public inspection as aforesaid, the separately established rates, fares and charges applied to the through transportation. * * * (7) No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act." Act of March 2, 1889, c. 382, as amended by Transportation Act of 1920, 41 Stat. 483, U. S. Comp. Stat. 1923 Supp. § 8569, Barnes' Federal Code, 1924 Supp. § 7890. And it is provided that the act shall apply to transportation of passengers or property in so far as such transportation takes place within the United States, expressly excepting transportation wholly within one state, "and not shipped to or from a foreign country from or to any place in the United States." 41 Stat. 474, § 400 (2), U. S. Comp. Stat. 1923 Supp. § 8563 (2), Barnes' Fed. Code, 1924 Supp. § 7884 (2); Texas & N. O. R. Co. v. Sabine Tram Co., supra.

It was the duty of the carrier, therefore, to file with the Interstate Commerce Commission a schedule of rates covering transportation in commerce with foreign countries as well as transportation in commerce between the several states. It has filed schedules of rates covering the transportation in question, which schedules are not limited to strictly interstate shipments as distinguished from shipments in foreign commerce; and, in the absence of such limitation, we must assume that the schedules were intended to comply with the full duty imposed upon the carrier, and that consequently the rates embraced therein apply to shipments moving in commerce with foreign countries as well as shipments in interstate commerce proper. We think, therefore, that the learned trial judge was correct in holding that the 38-cent rate prescribed in the schedules filed with the Interstate Commerce Commission, and not the intrastate rate, was the rate applicable, and the judgment of the District Court is accordingly affirmed.

Affirmed.