## Director General of Railroads v. Davis & Gilchrist.

*Carriers—Damages — Reconsignment charges—War tax on shipments—Domestic commerce distinguished from export.*

1. The essential character of the commerce determines whether it is to be classed as domestic or export.

2. Shipments intended for export are not exempt from the war tax imposed by the Act of Congress of Feb. 24, 1919, on freight charges accruing within the United States.

3. In an action by the Director General of Railroads to recover demurrage, storage, loading, unloading and reconsignment charges on goods intended for export, but unloaded at the port of shipment, the defendant cannot set up as a defence to demurrage and storage charges that a strike in the foreign country to which the goods were consigned rendered the shipment impossible.

4. In such case, where the affidavit of defence denies the claim for loading, unloading and reconsignment charges, and avers that such charges were not authorized by defendant, the plaintiff is put to the proof of establishing them before a jury.

Rule for judgment for want of a sufficient affidavit of defence. C. P. No. 5, Phila. Co., Dec. T., 1921, No. 3270.

*Sharswood Brinton,* for plaintiff.

MARTIN, P. J., April 23, 1926.—Plaintiff is seeking to recover from the defendants for demurrage, storage, loading, unloading and reconsignment charges, together with the war tax upon such charges, for twenty-eight cars of tobacco consigned to defendants at Washington Avenue wharf, Philadelphia. The statement of claim avers that the charges are authorized by the tariff rates filed with the Interstate Commerce Commission, and it is claimed that the freight was domestic and not foreign commerce. This theory is based upon the fact that an embargo had been placed upon shipments intended for export from Philadelphia, and that such shipments were not to be received without a permit at the port from which the goods were to be exported.

The affidavit of defence admits that defendant shipped the goods, but avers that they were intended for shipment abroad, which was communicated to the plaintiff, and many of the bills were so marked, and it is averred that the goods actually were exported, and the vessels and the ports to which the goods were ultimately consigned are named. It is alleged in the affidavit of defence that demurrage and storage were chargeable under a different tariff from that contended for by plaintiff, and at a lower rate, which is specified; that the loading, unloading and reconsignment were unauthorized by defendant and the charges therefor unwarranted; that no war tax was chargeable upon freight intended for export; under the Act of Feb. 24, 1919, 40 Stat. at L. 1057; and that, owing to a strike in the British merchant marine, it was impossible

Director General of Railroads v. Davis & Gilchrist.

to procure vessels for shipment of the merchandise to its destination in foreign parts, and for that reason defendant is not liable for the charges claimed.

For the purpose of disposing of this rule for judgment, it must be assumed that the facts averred in the affidavit of defence are true. The averments deny the claim of the plaintiff for loading, unloading and reconsignment charges, and put the plaintiff to proof to establish the liability of defendant. The denial that the loading and unloading was authorized by defendants is sufficient to prevent judgment, in the absence of an averment that plaintiff was authorized to do this work, either by the terms of shipment or war conditions prevailing at the time.

Cases were cited deciding questions of interstate commerce to support the plaintiff's claim that the shipment was domestic and warranted charges of demurrage and storage. In Coe v. Errol, 116 U. S. 517, it was decided that the point of time when goods entered into interstate commerce was when "they commenced their final movement for transportation from the state of their origin to that of their destination;" but later decisions have held that the essential character of the commerce determines whether it is to be classed as domestic or export: Louisiana Railroad Commission v. Texas & Pacific Ry. Co., 229 U. S. 336; Western Oil Refining Co. v. Lipscomb, 244 U. S. 346; Baltimore & Ohio Southwestern R. R. v. Settle, 260 U. S. 166. The affidavit of defence avers notice to plaintiff that the goods were intended for export, and that they actually were exported, thus establishing the character of the shipment as foreign and not domestic commerce, and requiring the charges for demurrage and storage to be governed by the tariff rates relating to foreign commerce. The tariffs referred to in the plaintiff's statement and in the affidavit of defence do not clearly indicate which were operative when the charges that are the basis of this suit accrued. For the purposes of this rule, the truth of the averments of the affidavit of defence must be assumed. The affidavit admits that defendant is liable for demurrage and storage as authorized by the tariffs shown in the schedule attached to the affidavit of defence, but denies liability for war tax, claiming that the Act of Feb. 24, 1919, does not authorize the imposition of the war tax upon shipments intended for export. The act provides: "(a) A tax equivalent to three per centum of the amount paid for the transportation, on and after said date, by rail or water or by any form of mechanical motive power when in competition with carriers by rail or water, of property or freight transported from one point in the United States to another; and a like tax on the amount paid for such transportation within the United States of property transported from a point without the United States to a point within the United States." The purpose of this act is to tax the receipts upon all transportation within the United States. Shipments intended for export are not exempted from the freight charges accruing within the United States. As to those charges, the affidavit of defence is insufficient.

The contention that defendant is not liable for any of the charges because of a strike in the British merchant marine is not sustained. The bills of lading contain the usual clause that the shipper is not to be responsible for loss, damage or delays because of riots or strikes, but this provision does not relieve a consignee from proper charges for demurrage and storage because of the fact that a strike might prevent reshipment of the goods. To so hold would make the carrier responsible as a warehouseman for the results or effects of a strike unconnected with the carrier or the carrier's business.

Judgment should be entered for the demurrage and storage charges admitted to be due under the schedule and tariffs set forth in the affidavit of defence,

and for the tax upon unpaid freight charges and demurrage and storage, with leave to plaintiff to proceed for the recovery of the disputed items of claim.

And now, to wit, April 23, 1926, the rule for judgment is made absolute for $145.60 of the amount claimed, being $43.20 for demurrage and storage, as indicated by exhibit "A" appended to the affidavit of defence, and war tax of $1.30 upon the demurrage, and $101.10 war tax upon prepaid freight charges.