UNITED STATES of America, Plaintiff,

v.

EIGHT UNLABELED CASES, MORE OR LESS, OF AN ARTICLE OF FOOD, Each Case Containing 12 Cans, Labeled in Part:

(can)

" * * * Spiced Mud–Skipper * * * Net Wt: 98 Grams Shelf Life: Two Years * * * Manufactured by Zhuhai Cannery * * * Sale Agent: Easy & Busy Ltd. P.O. Box 5067, G.P.O. H.K. * * * "

and

6,300 CASES, MORE OR LESS, OF AN ARTICLE OF FOOD, Each Case Containing 6/100 Ounce Cans, Labeled in Part:

(case)

" * * * Dragon Seed * * * Mushrooms * * * Packed for Tai Wing Hong, Importer, Inc. * * * Product of Taiwan * * * 6 Tins X 2840G * * * "

(can)

" * * * Dragon Seed * * * * Mushrooms Net Wt. 100 Oz. (6 Lb. 2 Oz.) * * * Packed for Tai Wing Hong, Importer Inc. * * * Product of Taiwan * * * ", Defendants.

No. 94 CV 5466.

United States District Court,
E.D. New York.

Dec. 20, 1995.

United States Attorney's Office, Civil Division (Charles P. Kelly, of counsel), Brooklyn, New York, for plaintiff.

Grunfeld, Desiderio, Lebowitz & Silverman (Robert B. Silverman, of counsel), New York City, for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

The United States brought this action under the Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 301 et seq., seeking the seizure, condemnation, and destruction of allegedly mislabeled and adulterated mushrooms and fish (spiced mud skipper) held in Brooklyn in the premises of Tai Wing Hong, Importer, Inc. (Tai Wing Hong) under a Customs bond. The court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355 and 21 U.S.C. § 334.

After commencement of the action Tai Wing Hong laid claim to the food. The government has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure in order to condemn and destroy the food. Tai Wing Hong has cross-moved for partial summary judgment.

Tai Wing Hong concedes that both the mushrooms and the mud skipper are adulterated and misbranded. It does not contest condemnation and destruction of the mud skipper but seeks dismissal of the claim against the mushrooms and either an order to export or permission to export them to Hong Kong. The chief issue concerns whether or not the government may condemn the mushrooms.

### I

The relevant facts are undisputed. In June 1994, Tai Wing Hong offered for admission into the United States three shipments of food products, including the mushrooms, imported from Hong Kong. The Customs Service (Customs) did not allow the goods into the United States but conditionally authorized delivery to Tai Wing Hong, to be held under a Customs bond pending inspection by the United States Food and Drug Administration (the Food and Drug Administration).

On several occasions between June 28 and August 9, 1994, inspectors from the Food and Drug Administration visited Tai Wing Hong's premises in Brooklyn and took samples from the three shipments.

At the warehouse an inspector noticed that there had been other labelling under the Taiwanese Dragon Seed labels on the mushroom containers. He also observed scraps of labels lying around the containers.

Analysis of the sampled mushrooms at the Food and Drug Administration's Center for Food Safety and Applied Nutrition revealed contamination with staphylococcal enterotoxin, which causes severe and sometimes fatal food poisoning. Inspection of the size of the cans and the nature of their codes and markings confirmed that they did not originate in Taiwan, as the labels claimed, but in the People's Republic of China.

During the summer of 1994, the Food and Drug Administration advised Tai Wing Hong that the food contained in its June shipments appeared to violate the Act and might therefore be refused admission. In August 1994, it issued Notices of Release for some products and Refusal for other products contained in the three shipments, but took no administrative actions as to the mushrooms and mud skipper. On October 24, 1994, Tai Wing Hong requested the release of the mushrooms for exportation.

On November 23, 1994 the United States Attorney commenced this action and obtained warrants of arrest for the mushrooms and the mud skipper, which were thereafter seized. The Government then made the motion for summary judgment.

Tai Wing Hong argues that since the mushrooms were not admitted into the United States the government may not condemn them but must allow Tai Wing Hong to export them.

## II

The question is whether the government may condemn the mushrooms under § 334(a) of the Act or must proceed under § 381 of the Act and give Tai Wing Hong the opportunity to send them back to its supplier.

Section 334(a) provides, in relevant part, that any article of food that "is" adulterated or misbranded "when introduced into or while in interstate commerce" or while held for sale (whether or not the first sale) after shipment "in interstate commerce" may be ordered "condemned" in a federal district court. 21 U.S.C. § 334(a)(1) (Supp.1995). Section 334(d) provides, in pertinent part, that any food condemned under § 334 shall be destroyed or sold as the court "may" direct, and that "if the article was imported" into the United States and the person seeking its release establishes certain conditions "the court may permit the article to be delivered to the owner for exportation in lieu of destruction."

Section 381(a) of the Act authorizes the government to take samples of food "imported or offered for import" into the United States and, if it "appears" from the samples or otherwise that the food is adulterated or misbranded, to refuse it admission. The parties agree that when the government acts under § 381 and refuses admission it "shall" grant the importer 90 days in which to re-export the goods to its foreign supplier and "shall" destroy the goods unless they are exported. *Id.*

Tai Wing Hong says that only when the government permits imported food to be released into the United States does the food become "introduced into" or "in commerce" so as to authorize the government to proceed to condemnation and destruction under § 334. Tai Wing Hong thus urges that if the concededly poisonous mushrooms are not "admitted into" the United States the government has no choice under § 381 but to allow their reexport.

The question of law, which appears not to have been decided in this circuit, is the meaning of the words "introduced into or . . . in interstate commerce" in § 334(a). The Act defines "interstate commerce" to include not only "commerce between any State or Territory," but also commerce between a State or Territory "and any place outside thereof." 21 U.S.C. § 321(b).

■ The ordinary meaning of this language suggests that the mushrooms were "introduced into" commerce between the United States and a place outside thereof, i.e., Hong Kong, and were "in" commerce from the moment they were shipped from Hong Kong destined for New York.

■ As Mr. Justice Brandeis held as long ago as 1922 in *Baltimore & O.S.W.R. Co. v. Settle,* 260 U.S. 166, 170–71, 43 S.Ct. 28, 30, 67 L.Ed. 189 (1922), it is "the intention with which" a shipment is "made" that determines the "character of the movement as interstate." *See also Texas & N.O.R. Co. v. Sabine Tram Co.,* 227 U.S. 111, 123, 33 S.Ct. 229, 233, 57 L.Ed. 442 (1912) (a shipment acquires "the character of foreign commerce" when it leaves the port of export and has started for its intended "destination.")

The invoice for the mushrooms shows they were destined for Tai Wing Hong's premises in Brooklyn, New York. They were thus "introduced into" commerce between Hong Kong and the United States.

Tai Wing Hong argues that a construction of § 334 to authorize seizure and condemnation of "imported articles" "still subject to detention" and not released into the United States would make § 381 "meaningless at the whim" of the government.

It is hard to believe that Congress left the government, which had discovered the dire consequences of ingestion of the mushrooms, no option other than to allow their introduction to the United States or to permit their reexport. To have restricted the government to such a choice would have had possible lethal consequences to consumers abroad, or perhaps in this country were a later importation of the mushrooms to remain undetected.

But in any event this court's construction of § 334(a) does not make § 381 meaningless. The two sections impose on the government different burdens of proof. Section 381 allows the government to refuse admission to goods where it "appears" they are

adulterated or misbranded. On the other hand under § 334 it is not enough that the goods so appear. Only if an offending article "is" misbranded or adulterated may the court order condemnation and the government must prove its case by a preponderance of the evidence.

Section 381 remains an effective remedy when the government believes the food is adulterated or misbranded, but cannot prove it. Moreover, even when the government can prove adulteration or misbranding, it may under § 381 allow exportation when it deems the products not to pose sufficient danger as to justify the expense of condemnation proceedings.

In arguing that § 334(a) gives the government no power to seize and condemn "imported articles" subject to "detention" Tai Wing Hong points to the provisions of § 334(d), which was enacted as a 1957 amendment to the Act.

The language of that subsection, summarized above, does not address, even by implication, the government's power to invoke § 334(a) to condemn food imported into the United States but detained at the port of entry. The manifest purpose of the amendment which became § 334(d) was to permit a court in its discretion to allow the reexportation of detained goods if the owner establishes certain conditions and even though the goods have been condemned.

It is true that the Congressional committees reporting on the bill that became the 1957 amendment evidently assumed at that time that § 334(a) and § 381 ordinarily applied in different circumstances, § 334(a) when the goods were seized in domestic commerce and § 381 when they were seized at the port of entry. *See* S.Rep. No. 993, 85th Cong., 1st Sess. 1957, *reprinted in* 1957 U.S.C.C.A.N.1971. But the 1957 legislation did not enact the speculations in the Congressional reports. *Cf. N.L.R.B. v. Health Care & Retirement Corp.*, — U.S. —, —, 114 S.Ct. 1778, 1784, 128 L.Ed.2d 586 (1994) (in Congressional Reports proposing amendments statements as to existing legislation do not alter it or provide an "authoritative interpretation" of it). Still less did those reports adopt a retroactive amendment of

the long existing provisions of § 334(a). *See id.* (such statements "do not have the 'force of law, for the Constitution is quite explicit about the procedure that Congress must follow in legislating.' ") (citation omitted).

Tai Wing Hong suggests no reason in policy why the court should distort the plain language of § 334(a), adopted in 1938, to diminish the Act's protection of "the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self protection." *United States v. Dotterweich*, 320 U.S. 277, 280, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943).

The court holds that § 334(a) authorizes the court to order the condemnation of food imported from a foreign port and refused admission to the United States. The Court of Appeals for the Fifth Circuit in *United States v. Food, 2998 Cases*, 64 F.3d 984 (5th Cir.1995), has reached the same result. *But cf. 230 Boxes, More or Less, of Fish v. United States*, 168 F.2d 361, 364 (6th Cir.1948) (dicta that § 334(a) "is operative after the article is released from Customs and admitted into this country").

### III

Tai Wing Hong says that even if the mushrooms were "introduced into" or were "in" commerce within the meaning of § 334(a), the court should in its discretion under § 334(d) allow reexport to the foreign supplier. That subsection, cited above, says that the court "may permit" the food to be released to the owner for reexportation "in lieu of condemnation" if the person seeking release establishes two conditions. The adulteration or misbranding must not have occurred after the importation and the person must have had no cause to believe it was adulterated or misbranded before release.

To be granted an opportunity to export, Tai Wing Hong must prove both that the adulteration or misbranding occurred before the mushrooms arrived in the United States and that it had no reason to believe that they were in such condition before their release from customs custody.

Tai Wing Hong has not met this burden. It offers the affidavit of its president that Tai Wing Hong did not affix new labels and that neither he nor his employees had reason to believe that the mushrooms were misbranded or adulterated. The government submits the affidavits of its inspectors stating that they discovered evidence that the mislabeling occurred at Tai Wing Hong's warehouse under bond. This suggests that the mushrooms were misbranded after importation.

Even if Tai Wing Hong could satisfy the conditions of § 334(d), the court would not exercise its discretion to permit reexportation.

The mushrooms, contaminated with possibly deadly staphylococcus enterotoxin, could only be sanitized through a process that would probably render them inedible. Tai Wing Hong's supplier would thus have little incentive to attempt to recondition them and might try to relabel and return them undetected to the United States. Indeed, if Tai Wing Hong is an innocent importer, its supplier initially misbranded the mushrooms and might do so again. The court will not create the risk to health and possibly life that release would create.

### IV

The government's motion for summary judgment is granted, and Tai Wing Hong's cross-motion for partial summary judgment is denied.

So Ordered.