LEWIS-SIMAS-JONES CO. *v.* SOUTHERN PACIFIC CO.

No. 520. Argued April 28, 29, 1931.—Decided May 25, 1931.

655

Mr. Robert E. Quirk, with whom Messrs. Ernest Clewe and E. W. Hollingsworth were on the brief, for petitioner.

Mr. J. R. Bell, with whom Messrs. G. H. Muckley, H. C. Booth, James E. Lyons, and Burton Mason were on the brief, for respondent.

Mr. Robert E. Quirk, by special leave of Court, filed a brief on behalf of The American Cyanamid Co., as amicus curiae.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Petitioner sued respondent in the superior court of the city and county of San Francisco, California, to recover damages alleged to have been caused by the exaction of freight charges which had been found excessive by the Interstate Commerce Commission in a reparation case. 102 I. C. C. 245. A jury being waived, the court made findings of fact, stated its conclusions of law and dismissed the case on the ground that the Commission's findings and order were void for lack of jurisdiction. The district court of appeal affirmed, 106 Cal. App. 437; 289 Pac. 643; the state supreme court declined to hear the case, and this court granted a writ of certiorari.

Defendant is an interstate carrier by railroad. Its lines connect with a line of a Mexican common carrier by rail extending from Navojoa, Sonora, to the international boundary at Nogales, Arizona. In 1923 defendant, in conjunction with the foreign line, transported three carloads of cow peas from Navojoa to San Francisco. The shipments moved at different times on through bills of lading issued by the foreign line. The rate charged was $1.33 per hundred pounds, stated in a tariff joined in by the carriers and filed with the Interstate Commerce Commission and the Department of Communications and

Public Works of Mexico. The carriers agreed to divide the rate, 63.175 cents to the foreign line and 69.825 cents to the defendant.

The cow peas were transported by the foreign line 377 miles to the boundary, thence by defendant 1,036 miles to destination. The defendant collected from plaintiff $3,828.74 as freight charges and that amount was divided in accordance with the divisions agreement. The average yield on these shipments was 90 cents per car mile and 18.8 mills per ton mile for the entire distance, 1,413 miles. The average yield to the foreign line was $1.60 per car mile and to defendant 64.6 cents.

The trial court found that defendant, by tariff filed with the Interstate Commerce Commission, maintained a rate of $1.14½ applicable to carload shipments of cow peas destined to San Francisco " originating at Nogales," " originating at the point where the lines " of the foreign carrier and of defendant touch the boundary or " loaded into cars at any point upon or adjacent to said international boundary line, within the limits of defendant's railroad yards at Nogales." The court found that the cow peas were in sacks and readily could have been transported, by means other than a railroad, to Nogales there to be loaded into cars for transportation over defendant's lines to San Francisco at the rate of $1.14½, that the Commission had made no finding in respect of such rate, and that it was " reasonable and lawful for application upon carload shipments of cow peas from Nogales, Arizona, including such shipments as might be loaded at any and all places within the railroad yard limits at that point, destined to San Francisco, California."

It was not found, and it does not appear from the record, that the defendant established or made available to shippers any rate applicable to the transportation over its lines from the boundary to San Francisco of cow peas in car loads originating at Navojoa or elsewhere in Mexico

and delivered to defendant at such boundary point by a connecting railroad for transportation to San Francisco. The record does not disclose what, if any, rate was available for the transportation of the cow peas as a local shipment from Navojoa to Nogales. And it may not reasonably be assumed that the charges of the foreign carrier for such transportation would be less than the amount it was entitled to have out of the joint through rate under its agreement with defendant. Indeed, under the principles ordinarily applied in making divisions agreements, in the absence of a special allowance or arbitrary differential, the foreign carrier's share of the through rate would be less than its local rate.

If defendant's local rate of $1.14½ be deemed to be applicable to the American part of the through transportation and the foreign carrier's proportion, 63.175 cents, of the joint rate be taken as the local rate from Navojoa to the boundary, the sum of the locals would amount to slightly more than $1.77½ as against the joint through rate of $1.33. There is nothing in the record to indicate that there was available for the transportation of such cow peas any rate or combination of rates less than the rate of $1.33.

The Commission found that at the time the cow peas were being transported defendant concurred in a rate of 94 cents per hundred pounds on garbanzos (a kind of pea) from Navojoa to San Francisco; that the rate of $1.33 for the transportation of the cow peas was unreasonable to the extent that it exceeded the 94 cent rate; that the shipments moved as described; that plaintiff paid and bore the freight charges; that so far as defendant participated in such transportation and rates it was a tort-feasor and that it should make reparation for the damage to complainant in the sum of $1,122.72 with interest. And by its order the Commission authorized and directed defendant to pay complainant that sum,

Defendant having refused to make reparation, plaintiff brought this action and in its complaint alleged the transportation, the unreasonableness of the rate as found by the Commission, showed the charges paid by it to defendant, made the Commission's report and order a part of the complaint and prayed judgment for the amount of damages found by the Commission.

Defendant's answer admitted the transportation, the rate exacted and the charges collected. It alleged that defendant maintained a rate applicable on cow peas in carloads from the international boundary at Nogales to San Francisco but it did not specify that rate or state that it was reasonable. It averred that the Commission had not found such rate unjust, unreasonable or otherwise in violation of law and that the Commission had no jurisdiction to order the defendant to pay any reparation or damages.

The opinion of the district court of appeal differentiates this case from *News Syndicate Co.* v. *New York Cent. R. Co.,* 275 U. S. 179, on the ground that it there appeared that the carrier violated the Act by failing to maintain a rate to cover the transportation from the international boundary to destination thereby compelling the shipper to pay the excessive joint through rate and that, for the determination of damages, it was necessary for the Commission to determine the reasonableness of such rate. But the court said that in this case defendant published and maintained a rate on shipments from the boundary to destination which was not found unreasonable by the Commission and plaintiff was not compelled to pay the joint through rate by reason of any violation of the Act on the part of the defendant.

We are of opinion that the record shows that the Commission had jurisdiction to determine the reasonableness of the joint through international rate.

The Act does not empower the Commission to prescribe or regulate such rates. It applies to international commerce only in so far as the transportation takes place within the United States.* The Act applied to the transportation of the cow peas from the boundary to destination and required defendant to establish just and reasonable rates for that service. And defendant was liable to shippers for damages resulting from its failure so to do. §§ 1 (1) (c), (2) and (5), 6 (1), (7) and 8.

The Act prohibits every excessive charge, whether exacted directly or obtained by indirection, and its provisions are designed to prevent evasion of the rule that every charge for transportation shall be just and reasonable. The collection by a common carrier of exorbitant charges is a tort (*Smith* v. *Chicago & Northwestern Ry. Co.*, 49 Wis. 443, 448; 5 N. W. 240) and the general rule as to liability of joint tort-feasors applies where two or more connecting carriers combine to impose excessive charges for transportation over their connecting lines. *Louisville & N. R. Co.* v. *Sloss-Sheffield Co.*, 269 U. S. 217, 232–233. Defendant is liable for any violation of the Act by it that caused or contributed to cause damage to plaintiff without regard to the proportion of the charges attributable to the foreign transportation or paid to the foreign carrier. *News Syndicate Co.* v. *New York Cent. R. Co., supra,* 187–188

The Act does not create a cause of action based on the Commission's findings and reparation order for the recov-

---

* The Act does not authorize or forbid the making of joint through international rates. The Commission, recognizing that they are of great convenience to carriers and shippers, does not object to their maintenance if shown, together with the agreed divisions, in tariffs filed in compliance with requirements prescribed by it. Tariff Circular 18A, Rule 72, adopted November 22, 1909, addition adopted March 7, 1910. Publication of Rates Between United States and Canada, 147 I. C. C. 778.

ery of money collected as freight charges based on rates alleged to be unjust and unreasonable. It makes a determination by the Commission of the unreasonableness of the rate attacked and the extent that it is, if at all, excessive a condition precedent to suit.

Section 16 (2) provides that, if the carrier shall not comply with an order for the payment of money within the time specified, the person for whose benefit it was made may file in the district court of the United States " or in any state court of general jurisdiction " a petition setting forth briefly " the causes for which he claims damages and the order of the Commission," and that the suit in the United States court shall proceed in all respects " like other civil suits for damages " except that the findings and order of the Commission shall be prima facie evidence of the facts therein stated. The section contains nothing relating to evidence or procedure in state courts. It is clear that the action is not on the award as such. *Meeker & Co.* v. *Lehigh Valley R. Co.*, 236 U. S. 412, 430. But no action for damages alleged to have been caused by the exaction of excessive rates for interstate transportation can be maintained in any court, state or federal, in the absence of a prior finding by the Commission that the rate charged was unreasonable. The reasons upon which this rule rests have been fully stated in our decisions. *Texas & Pac. Ry.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 444. *Robinson* v. *Baltimore & Ohio R. Co.*, 222 U. S. 506, 510. Cf. *Baltimore & Ohio R. Co.* v. *Pitcairn Coal Co.*, 215 U. S. 481, 498. *Great Northern Ry.* v. *Merchants Elev. Co.*, 259 U. S. 285, 291–292.

There is no essential difference in this respect between a claim arising out of interstate transportation and the one under consideration. The Act applies to the interstate rate, and an excessive charge for the transportation covered by it is a direct and immediate violation. While

the Act does not govern the joint through international rate, the demand for reparation is grounded upon the claim that the maintenance of that rate participated in by the American carrier and its violation of the Act, in failing to maintain a just and reasonable rate for the transportation from the boundary to destination, operated to compel payment of the charges based on the excessive joint rate.

The complaint before the Commission alleged that the joint through rate was unreasonable and was charged in violation of the Act. It was undoubtedly sufficient to invoke the jurisdiction of the Commission. The only requirement (§ 13) is that it "shall briefly state the facts." Reparation proceedings before the Commission properly may be and frequently are quite informal. Many claims on account of excessive charges are dealt with and finally disposed of, without formal pleading or proof, by means of correspondence carried on by the Commission with claimants and carriers respectively. Rule III (b). Defendant did not apply to the Commission for authority to make the reparation claimed. It moved to dismiss the complaint alleging that the Commission lacked jurisdiction over rates from points in an adjacent foreign country to points in the United States. The motion was denied on the authority of International Nickel Co. v. Director General, 66 I. C. C. 627. The record does not show the contents or substance of defendant's answer referred to in the order. It does not appear what, if any, issue was joined as to the facts. It is the duty of the Commission, if there appears "any reasonable ground for investigating" the complaint, to investigate the matters complained of "in such manner and by such means as it shall deem proper." § 13. The report shows that the case was presented under shortened procedure and, having regard to the rules of practice, this implies that there was a formal complaint but no oral hearing. Rule X-A. The evidence referred to in

the report fully sustains the finding that the joint through rate of $1.33 was unreasonable to the extent that it exceeded the 94 cent rate contemporaneously applied to like transportation of garbanzos.

The trial court's findings are not sufficient to show that at the time the shipments in question moved defendant maintained a just and reasonable rate applicable to the transportation of such shipment over its lines from the international boundary to destination.

The tariff, as described in the findings, does not purport to apply to the American part of such international transportation. A carload shipment "originating" at Nogales or at the point where the line of the foreign carrier and that of the defendant touch the boundary or in defendant's railroad yard adjacent to the boundary clearly must be distinguished from a through carload shipment brought to defendant at the boundary by a foreign carrier. The former covers local transportation only and involves two terminal services, one at Nogales, the point where received from the shipper, and the other at San Francisco, the place where delivered to the consignee. The latter involves the transportation of a through car from the point of connection and only the one terminal service at destination. It is manifest that a tariff limited, as is that described in the findings, to shipments so originating on defendant's line does not apply to the American part of the transportation of an international shipment on a through bill of lading. It is to be presumed that if any tariff covering that part of the through service existed, defendant would have produced it; and, in view of the facts shown, the burden was upon the carrier to bring forward evidence that a rate therefor had been established as required by the Act. It follows that the lower court erred in distinguishing this case from the *News Syndicate Co.* v. *New York Cent. R. Co., supra.* That case controls this one.

*Judgment reversed.*