**OREGON–WASHINGTON R. & NAV. CO. v. STRAUSS & CO., Inc.**

No. 7498.

Circuit Court of Appeals, Ninth Circuit.

Nov. 19, 1934.

Arthur C. Spencer and Roy F. Shields, both of Portland, Or., for appellant.

Wm. P. Ellis, of Salem, Or., and Walter B. Whitcomb, of Bellingham, Wash., for appellee.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

The court below having sustained a demurrer to the appellant's complaint, the sole question presented on this appeal is whether or not the complaint states facts sufficient to constitute a cause of action.

The suit was instituted by the appellant to recover freight charges on shipments of grain originating at interior points in eastern Oregon and moving thence by the appellant's railroad to the appellee's dock at Portland, Or. The appellant contends that its complaint sufficiently alleges that the shipments in question were to be transshipped by vessel to other states and to foreign countries.

The freight charges sought to be collected were computed on the basis of the carrier's tariffs on file with the Interstate Commerce Commission. The controversy arose from the appellee shipper's contention that those tariffs were not applicable because the rail movement of the grain was intrastate and subject to local intrastate rates prescribed by the Oregon Public Service Commission.

On the other hand, the appellant carrier maintains that the rail transportation within the state was in reality a part of an intended movement to destinations beyond the state, and that therefore the essential character of the commerce was foreign or interstate, with jurisdiction of the rail rate vested in the Interstate Commerce Commission.

These conflicting positions present the issue to be determined here.

Briefly summarized, the complaint alleges that the appellee, through a subsidiary, owns a dock at Portland; that it is in the business of buying, selling, shipping, and exporting wheat; that "at all times" it "had a substantial number of outstanding and unfulfilled contracts" for sale and delivery of wheat to foreign and California destinations; and "that at the time of the movement by rail of each of the shipments mentioned in this complaint" it "had outstanding contracts for the sale of that wheat and all other wheat it then had on hand or which it was then in the course of purchasing." The complaint continues:

"In purchasing grain to meet such foreign sales contracts, the defendant [appellee] either purchased the grain while it was in the warehouses at interior points of origin or purchased it 'f. o. b. track Portland' on the basis of Portland Terminal rates and grades; but in either event, when a particular shipment left the interior point of origin defendant did not always know then what particular vessel would carry the shipment in export or to what particular foreign sale it would be applied because the cargoes were made up by the mingling of grain from various localities as aforesaid and the shipment might form a part of several different ship cargoes, but the defendant did know, prior to the time the shipment left the interior point of origin, to what particular group of orders and group of cargoes such shipment would be applied. * * *

"All wheat brought to said dock by defendant for export went into export shipments even though such wheat, or some of it, did not average up to the type sample. * * *

"During said period defendant also sold grain to purchasers in California and shipped such grain by boat from Portland to California ports for delivery in pursuance to such sale contracts. * * *

"During all of said times defendant did, and at all times knew that it would, export to foreign countries and/or ship to interstate destinations upwards of 90 per cent of all grain purchased and handled by it, less than ten per cent being sold for domestic use in the State of Oregon.

"Each shipment mentioned in this complaint was purchased, sold, shipped and handled in the manner hereinbefore stated, and was actually exported to a foreign country or shipped by boat to a California destination. Each of said shipments remained at Portland only so long as reasonably necessary for the purposes of inspection, weighing, grading, cleaning, blending and assembling for ships' cargoes as aforesaid. All of said grain was at all times after it left the point of origin exempted from taxation by the State of Oregon and its subdivisions for the reason that it was considered to be in transit in interstate or export commerce after leaving such point of origin in Eastern Oregon. Because of the fact hereinbefore stated, the plaintiff alleges that the transportation of said grain by plaintiff over its line of railroad was part of a movement of same in interstate and foreign commerce and that the rates and charges applicable thereto are subject to the Interstate Commerce Act and the jurisdiction of the Interstate Commerce Commission."

Regarding the continuity of the transportation herein involved, the complaint contained the following allegations:

" * * * The transportation of said shipment between said points was a part of a through and continuous movement of said shipment from said point of origin through Portland, Oregon, to a point in another state or a foreign country as the ultimate destination thereof.

"That because of the facts hereinafter stated, the transportation of said shipment between said points was a part of a through and continuous movement of said shipment from said point of origin through Portland, Oregon, to a point in another state or a foreign country as the ultimate destination thereof."

The complaint contains 248 causes of action; each covering a different carload shipment. Only the first and second of these are set out in the transcript; the others being summarized in a single paragraph, in pursuance to a stipulation. The complaint prays for judgment in the sum of $10,099.01, representing the difference between the interstate rates claimed by the appellant and the intrastate rates actually paid by the appellee.

Holding that the complaint did not sufficiently allege either the intention of the parties that the shipments should move in interstate or foreign commerce or the fact that the transportation was continuous, the court below sustained the demurrer. The appellant electing to stand on its complaint, the court gave judgment for the appellee.

In its brief, the appellant explains that its decision to stand on its original pleading was based upon its unwillingness "to verify an amended pleading stating more than the known facts alleged in the original pleading."

As to the shipments that might have been destined for foreign countries, we may remark in passing that it is well established that the power of the Interstate Commerce Commission to prescribe or regulate rates for such commerce is authorized "only in so far as the transportation takes place within the United States." Lewis, etc., Co. v. Southern Pac. Co., 283 U. S. 654, 660, 51 S. Ct. 592, 595, 75 L. Ed. 1333; Texas & Pacific Ry. Co. v. U. S., 289 U. S. 627, 636, 53 S. Ct. 768, 77 L. Ed. 1410; Great Northern Ry. Co. v. Sullivan (C. C. A. 8) 72 F.(2d) 587, 588. Accordingly, in the instant case we are con-

cerned, as we have seen, only with the rates that should have been charged on those portions of the shipments that took place within the state of Oregon. We are called upon to determine whether the complaint sufficiently alleges facts showing that such transportation, although between points within the state, was in reality a part of an interstate or foreign movement, to which the interstate rates would be applicable.

 Under the decisions, it is· clear that two elements are indispensable to constitute an interstate or foreign shipment:

(1) There must be a through and continuous movement from one state to another, or to a foreign country.

(2) There must be, at the time that the movement is started, an intention that the shipments shall be interstate or foreign, and this intention must be carried out. In a word, there must be the intent and the event.

As to the first ingredient the court below said: "Nor does the complaint set out continuity of transportation as a fact. It is true a sufficient allegation thereof appears in the first paragraph of Subdivision IV above quoted. But in the next paragraph, the same allegation is set out with the qualification 'because of the facts hereinafter stated.' If the court consider the pleading as a whole, therefore, there is no direct and unqualified statement of a continuity of transportation as to the particular shipment."

In view of our holding upon the sufficiency of the complaint as to the allegation of the shipper's intent, it is unnecessary for us to pass upon the correctness of the lower court's holding as to the allegation of continuity. As will hereafter appear, we are of the opinion that the complaint did not sufficiently allege that the appellee intended that the shipments should be interstate.

Addressing our attention to the second element necessary to constitute ·interstate commerce, we find considerable emphasis in the books on the proposition that there must be a clear intent that the shipment is to be sent into another state or into a foreign country, and that such intent must actually be carried out.

During the past three decades at least, the Supreme Court has repeatedly expounded this rule. In Swift & Co. v. United States, 196 U. S. 375, 398, 399, 25 S. Ct. 276, 280, 49 L. Ed. 518, Mr. Justice Holmes said: "When cattle are sent for sale from a place in one state, with the expectation that they will end their transit, after purchase, in another, and

when in effect they do so, with only the interruption necessary to find a purchaser at the stock yards, and when this is a typical, constantly recurring course, the current thus existing is a current of commerce among the states, and the purchase of the cattle is a part and incident of such commerce."

The limits of the doctrine were carefully laid down in Texas & N. O. R. R. Co. v. Sabine Tram Co., 227 U. S. 111, 124, 130, 33 S. Ct. 229, 234, 57 L. Ed. 442. After conceding "that there must ·be continuity of movement, * * * and to a foreign destination intended at the time of the shipment," the court pointed out that there was not "a break, in the sense of the Interstate Commerce Law [49 USCA § 1 et seq.] and the cited cases, in the continuity of the transportation of the lumber * * * by the delay and its transhipment at Sabine"; and that "the absence of a definite foreign destination" did not "alter the character of the shipments."

In B. & O. S. W. R. R. Co. v. Settle, 260 U. S. 166, 171, 173, 174, 43 S. Ct. 28, 31, 67 L. Ed. 189, the court re-emphasized the importance of an "original and persisting intention of the shippers which was carried out," and again outlined the boundaries of the rule: "Under these ·circumstances, the intention as it was carried out determined, as matter of law, the essential nature of the movement, and hence that the movement through to Madisonville was an interstate shipment; for neither through billing, uninterrupted movement, continuous possession by the carrier, nor unbroken bulk is an essential of a through interstate shipment. These are common incidents of a through shipment, and when the intention with which a shipment was made is in issue, the presence, or absence, of one or all of these incidents may be important evidence bearing upon that question. But where it is admitted that the shipment made to the ultimate destination had at all times .been intended, these incidents are without legal significance as bearing on the character of the traffic."

See, also, Southern Pacific Terminal Co. v. Int. Com. Comm., 219 U. S. 498, 526, 527, 31 S. Ct. 279, 55 L. Ed. 310·; Ohio R. R. Comm. v. Worthington, 225 U. S. 101, 108–110, 32 S. Ct. 653, 56 L. Ed. 1004; United States v. Reading Co., 226 U. S. 324, 367, 368, 33 S. Ct. 90, 57 L. Ed. 243; Louisiana R. R. Comm. v. Tex. & Pac. Ry., 229 U. S. 336, 341, 342·, 33 S. Ct. 837, 57 L. Ed. 1215; Western Union Tel. Co. v. Foster, 247 U. S. 105, 113, 38 S. Ct. 438, 62 L. Ed. 1006, 1 A. L. R. 1278; Eureka

Pipe Line Co. v. Hallanan, 257 U. S. 265, 272, 42 S. Ct. 101, 66 L. Ed. 227; United Fuel Gas Co. v. Hallanan, 257 U. S. 277, 281, 42 S. Ct. 105, 66 L. Ed. 234; Stafford v. Wallace, 258 U. S. 495, 516, 42 S. Ct. 397, 66 L. Ed. 735, 23 A. L. R. 229; Board of Trade of Chicago v. Olsen, 262 U. S. 1, 33, 34, 43 S. Ct. 470, 67 L. Ed. 839; Spalding & Bros. v. Edwards, 262 U. S. 66, 69, 70, 43 S. Ct. 485, 67 L. Ed. 865; Hughes Bros. Timber Co. v. Minnesota, 272 U. S. 469, 474, 475, 476, 47 S. Ct. 170, 71 L. Ed. 359; Atl. C. L. R. R. v. Standard Oil Co., 275 U. S. 257, 268, 269, 48 S. Ct. 107, 72 L. Ed. 270; Carson Petroleum Co. v. Vial, 279 U. S. 95, 103, 105–109, 49 S. Ct. 292, 73 L. Ed. 626; United States v. Erie R. Co., 280 U. S. 98, 101, 102, 50 S. Ct. 51, 74 L. Ed. 187; Minnesota v. Blasius, 290 U. S. 1, 7–10, 54 S. Ct. 34, 78 L. Ed. 131; Seaboard Air Line Ry. Co. v. Lee (D. C.) 14 F.(2d) 439, 442, affirmed, 276 U. S. 591, 48 S. Ct. 211, 72 L. Ed. 720.

From the foregoing decisions, it will be seen that the original intention of the shipper that the merchandise is to be sent into another state or into a foreign country is one of the indispensable elements of an interstate shipment. The other indispensable element is that such intention should be actually carried out.

Since these two elements are essential to the statement of a cause of action under the Interstate Commerce Act (49 USCA § 1 et seq.), they should be clearly, definitely, and unequivocally set forth.

Turning again to the allegations of the complaint in the instant case, we find that the appellant, in its brief, argues that its pleadings do, as a matter of law, set forth the shipper's interstate intention, actually carried out.

The appellant reasons thus:

" 'Each shipment mentioned in this complaint was purchased, sold, shipped and handled in the manner hereinbefore stated, and was actually exported to a foreign country or shipped by boat to a California destination.'

"This allegation is to be read in connection with the further allegation previously quoted that 'the defendant did know, prior to the time the shipment left the interior point of origin, to what particular group of orders and group of cargoes such shipment would be applied.' The two allegations read together show that each shipment involved in this case was moved by boat to a California or foreign destination, and that appellee knew at the time the shipment left the originating point that this would be so."

Again, in its reply brief, the appellant insists that the foregoing allegations of the complaint are "but another way of saying that as to each car the defendant did know in advance of the rail movement that this particular car would be applied to fill a foreign or a California order, although it did not always know to which particular foreign or California order it would be applied."

For three reasons, we believe that the circumlocution found in the complaint is significant.

In the first place, a simple, direct, and forthright statement of the intent and the event as to the interstate character of the shipments would have been an easy matter for the appellant's able counsel. A brief allegation such as the following would have answered the purpose: "Prior to the time that each shipment mentioned in this complaint left the interior point of origin, the defendant intended that such shipment would be transported into another state or to a foreign country; and such shipment was in fact so transported."

In the language of the court below, the shipper's intent, like the continuity of the movement, "is in itself an ultimate fact, which it is only necessary to allege boldly."

Secondly, the record shows, and the appellant admits, that opportunity was given to the appellant to amend its complaint. But counsel refused to do so, and elected to stand on the pleadings. From this it might be legitimately inferred that the complaint, circumlocution and all, represented the maximum of what the appellant believed that it could prove.

Finally, it is not necessary to indulge in inferences as to the appellant's reasons for not pleading further. We have its own statement as to this: "Not being willing to verify an amended complaint stating more than the known facts alleged in the original pleading, appellant felt impelled to stand on that pleading and to take this appeal."

In view of the foregoing, the conclusion is inescapable that the reason why the appellant did not directly allege the shipper's "continuing intent" (United States v. Erie R. Co., supra, at pages 101 and 102 of 280 U. S., 50 S. Ct. 51, 52, 74 L. Ed. 187) or "original and persisting intention" (the Settle Case, supra, at page 174 of 260 U. S., 43 S. Ct. 28, 31, 67 L. Ed. 189), was that the appellant could not truthfully do so.

In a word, we do not believe that this court should spell out, from the appellant's roundabout allegations, any statement of continuing intention as to the interstate character of the shipments, when the appellant itself, given the opportunity to do so, declined to amend its pleadings.

In Driskell v. Powell et al. (C. C. A. 5) 67 F.(2d) 484, 485, the court said: "Pleadings at law are to be construed on demurrer strictly against the pleader. It is to be presumed that the pleader has put his case in the most favorable light possible, and omission of facts important to be alleged is taken to mean that they do not exist."

See, also, Chunes v. Duluth, W. & P. Ry. Co. (D. C.) 292 F. 153, 154; and Coffey v. Colonial Trust Co., 60 App. D. C. 163, 50 F.(2d) 313, 314.

■ Accordingly, we hold that the appellant's complaint did not contain a sufficient statement of the shipper's original intention that the carloads were to be·transported into another state or to a foreign country, and that therefore the court below properly sustained the demurrer.

Judgment affirmed.