292

CENTRAL OF GEORGIA RY. CO. et al. v.
WEST VIRGINIA PULP & PAPER
CO., and four other cases.

Nos. 6844–6848.

United States Court of Appeals for the
District of Columbia.

Argued May 10, 1937.

Decided June 14, 1937.

Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, and R. Aubrey Bogley, all of Washington, D. C., and Francis R. Cross, of Baltimore, Md., for all appellants.

John T. Money, Wilbur La Roe, Jr., Frederick E. Brown, and Arthur L. Winn,

Jr., all of Washington, D. C., for appellees West Virginia Pulp & Paper Co. and D. M. Bare Paper Co.

John T. Money, C. R. Marshall, Wilbur La Roe, Jr., and Arthur L. Winn, Jr., all of Washington, D. C., for appellees Castanea Paper Co. and New York & Pennsylvania Co.

John T. Money and Spencer T. Money, both of Washington, D. C., for appellee Empire Floor & Wall Tile Co., Inc.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

This is an appeal by the Baltimore & Ohio Railroad Company and other railroads who were defendants below from five judgments totaling approximately $96,000 entered in the United States District Court in favor of the plaintiffs in five actions at law for damages for the exaction of unreasonable and unlawful charges for the interstate transportation of property.

At the trials a jury was waived in writing, and the cases were submitted to the court on both the facts and the law. At the suggestion of the court and by agreement of parties, the cases were heard to the same effect as if they had been formally consolidated for trial. In this court all the cases were heard on one record comprising four large volumes of nearly a thousand pages of print and some 400 pages of exhibits. We think, however, the question for decision is within much narrower compass.

The actions were begun to enforce orders of the Interstate Commerce Commission which directed defendant railroads to pay certain amounts to plaintiffs as reparation on account of the rates collected on clay transported from origins in North Carolina, South Carolina, and Georgia, to destinations in New York, New Jersey, and Pennsylvania. As we have said, there were written stipulations waiving a jury, and the record discloses there was a general finding in favor of the plaintiff in each case. The record further discloses that there were no requests from either side for special findings of fact or law, and no special findings were made. Neither was there any motion by appellants for judgment, and the only exceptions which the record discloses were, first, to the entry of the judgments—and this, as was held in

Bank of Waterproof v. Fidelity & Deposit Co. (C.C.A.) 299 F. 478,. 482, presents nothing for review—and, second, to the overruling of objections to the admission in evidence of the commission's reports and reparation orders relied on by plaintiffs. No point was made based upon the pleadings. In this state of the record the rule—stated by the Supreme Court in Fleischmann Construction Co. v. United States, 270 U.S. 349, 355, 356, 357, 46 S. Ct. 284, 287, 70 L.Ed. 624—is, "that in the absence of special findings, the general finding of the court is conclusive upon all matters of fact, and prevents any inquiry into the conclusions of law embodied therein, except in so far as the rulings during the progress of the trial were excepted to and duly preserved by bill of exceptions, as required by the statute." We recently had occasion to apply the rule in Darby v. Montgomery County Nat. Bank, 63 App. D.C. 313, 72 F.(2d) 181, 182, and in International Finance Corporation v. General Motors Acceptance Corporation, 63 App. D.C. 325, 72 F.(2d) 376. In the former we said:

"The statute in the District of Columbia governing the procedure in the trial of a cause by a court on a waiver of jury and declaring the effect of the court's finding, either general or special, is the same as the statute applying to other federal courts outside the District."

And, referring to the applicable statutory provision both as to federal courts generally and federal courts in the District of Columbia, we said:

"Under these sections the trial judge assumes, in addition to his judicial duties, the function of a jury, and passes on both the law and the facts. His finding on the facts, if general, has the same effect as the verdict of a jury, and the effect of the verdict of a jury is to foreclose all disputed, as well as all undisputed, questions of fact, unless challenged by a motion for binding instructions at the close of the case."

And see, also, Eastman Kodak Co. v. Gray, 292 U.S. 332, 54 S.Ct. 722, 78 L.Ed. 1291, McCaughn v. Real Estate Co., 297 U.S. 606, 607, 56 S.Ct. 604, 80 L.Ed. 879, and Federal Intermediate Credit Bank v. L'Herisson (C.C.A.) 33 F.(2d) 841.

No more need be said to show that we are without jurisdiction to examine either the facts or rulings of law during the trial save as to the second exception we have

mentioned. The exception was taken at the beginning of the trial under these circumstances: Counsel for the plaintiffs offered in evidence a certified copy of the report and orders of the Interstate Commerce Commission in the case of R. T. Vanderbilt Company, Inc., et al. v. Atlantic Coast Line Railroad Co., et al.;[1] whereupon counsel for appellants objected on the ground that it appeared from the face of the reports that they were void for two reasons—first, because they were based on a mistake of law, and, second, because the commission had failed to make the necessary finding to support the finding of unreasonableness. Similar objection was made to the receipt in evidence of the several reparation orders upon which plaintiffs relied. These grounds of objection and exception to the introduction of the commission's reports and orders are expanded in the assignments to embrace error because the orders failed to contain the necessary basic or essential findings of fact; were beyond the statutory power of the commission; were arbitrary and capricious; and were unsupported by and contrary to the evidence before the commission. And the argument to sustain this is that the orders are void as a matter of law because—as appellants assert—the commission in fixing reasonable rates "gave operative effect" contrary to its power and authority to "an element of water competition."

In our opinion the reports and orders were properly admitted in evidence, were sufficient under the provisions of the statute, and made out a prima facie case which, nothing to the contrary being shown, entitled plaintiffs to judgments.

First. Section 16, paragraph 2, of the Interstate Commerce Act, T. 49, U.S.C., § 16, 49 U.S.C.A. § 16 (2), provides as follows:

"If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant, or any person for whose benefit such order was made, may file in the district court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the road of the carrier runs, * * * a petition setting forth briefly the causes for which he claims damages, and

the order of the commission in the premises. Such suit in the district court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the commission shall be prima facie evidence of the facts therein stated," etc.

■ Since the commission has no power to enforce its own orders and such orders are enforceable only in the courts, Congress has provided the measure of proof necessary to make out a prima facie case. The recovery, however, is upon the tort committed by the carrier in making an illegal charge. Lewis, etc., Co. v. Southern Pac. Co., 283 U.S. 654, 660, 51 S.Ct. 592, 75 L.Ed. 1333.

■ The reports and orders of the commission are, therefore, a proper and necessary part of the proof in each such action. In Meeker v. Lehigh Valley R. Co., 236 U.S. 434, 35 S.Ct. 337, 59 L.Ed. 659, the Supreme Court held such reports and orders admissible even against the objection that they contained other irrelevant matters.

■ Second. As we have seen, plaintiffs below sued to recover damages for the exaction of unreasonable charges, that is to say, to recover the amount exacted in excess of the reasonable rates found by the commission to be required by the Interstate Commerce Act. In order to make out a prima facie case, they offered proof of the determination by the commission of the amount of reasonable rates for the service, and that the rates charged were unreasonable, and likewise proof that the excess between the two had been paid. There is no dispute between the parties as to the amount of the payments. Indeed, the parties have stipulated the correct amounts based on the commission's finding of reasonable rates. Appellants admit service on them of the commission's orders and their failure to pay the sums found to be due. In these circumstances, it is perfectly clear that plaintiffs' prima facie case was complete unless there was sufficient evidence to overcome the case made. But, since we cannot examine the evidence we need not stop to consider this phase, and this leaves only the question whether the orders of the commission are void because based on a mistake of law

---

[1] (which was the title of the case in which the reparation orders were entered–167 I. C.C. 319; 194 I.C.C. 702.)

or because they fail to contain sufficient findings to support the determination of unreasonableness.

The commission made two reports, each after extensive hearings. The first was based upon complaints by shippers and receivers of southern clay that the existing rates were unreasonable, and the purpose of all the complaints was to have the commission fix maximum reasonable rates and award reparation. The commission's decision as to the rates was made in July, 1930, and the conclusion was that existing rates from the southern producing points to the so-called trunk line and New England territory were unreasonable. The basis of the holding was explained in the commission's report at great length, and shows that the commission considered all the usual elements applicable in fixing reasonable rates. And there is nothing in the commission's report nor in any of the documents filed by plaintiffs in supplementing their prima facie case which indicates that the commission committed the error of law complained of by appellants, viz.: That it was influenced in reaching its determination of reasonable rates by taking into consideration competition of water routes or water rates to trunk line and New England territory. It is true that in the second report of the commission filed July, 1933, which was in substance a rehearing and redecision of the question decided in 1930, the commission stated that it was claimed by the railroads that the reasonable rate fixed in the former order was about 10 per cent. lower to trunk line and New England territory than to central territory and that this was due to the fact that the first-class all-rail rate—which was made the basis of the rate here challenged —was fixed by the commission in a previous proceeding entitled Southern Class Rate Investigation (100 I.C.C. 513; 109 I.C.C. 300; 113 I.C.C. 200; 128 I.C.C. 567), instituted in 1922 and concluded in 1928, and was based upon a consideration of water competition. But in reply to this the commission said that, while it was true that in the 1922 hearing all-rail rates from the south to eastern territory were influenced by rates applying in connection with rail and water routes, that of itself did not prove that in their present action in fixing maximum rates on the basis of a uniform percentage of the formerly approved first-class rates they were influenced by consid-

erations of water competition, and we agree in this position. Certainly there is nothing in the commission's report to show that water competition was mentioned or thought of in the present hearing, and the fact is there is no water competition, but on the contrary the actual elements which entered into the fixing of the rates are fully shown. So that we have a case in which the commission has in the report stated the correct standards which guided it in determining what should be the maximum level; and with nothing more than conjecture to the contrary, we do not feel at liberty to reach a different conclusion.

The precise point made here was made by the railroads in a former proceeding instituted by them in 1933 in a statutory court in Delaware.[2] It was contended there, as is contended here, that the commission had proceeded upon a wrong theory in fixing the rates, that is to say, that its action was based upon the existence of water competition along the Atlantic seaboard, which was not a proper element for consideration. The court held that this contention was not sustainable. They said it by no means followed that, because the class rates established by the commission fifteen years ago reflected water competition, the rate fixed by the commission in the present case—though based on the class rates—did likewise. They pointed out, as is apparent, that if the class rates had been depressed because based on water competition the fixed rates could have avoided this influence by a variation in the percentage, and that the report of the commission was wholly consistent with that view. In effect, the three-judge court held that the order fixing the rates was based upon then existing facts and that the method of expressing the rate in percentage of a class rate was wholly a method of convenience. The court said (12 F.Supp. 261, at page 263):

"The first and supplemental reports of the Commission fully and adequately assign the reasons for the rulings made. The Commission in its report of July 12, 1930, found the rates charged by the railroads before 1930 on kaolin [clay] from points in the south to points in the northeast of Pittsburgh to have been unconscionably high. It based this finding on considerations drawn from ample evidence. Among them were that (1) comparison of the rates

---

[2] Baltimore & O. R. Co. v. United States (D.C.) 12 F.Supp. 261.

before 1930 disclosed a great disparity between the rates charged by the railroads to points east and those charged to points west of Pittsburgh, the former being very much in excess of the latter; (2) in reversal of the accepted rule, the rates on long hauls were proportionately higher than on short hauls; (3) the rates from the more northern points of production to the same or like points of destination were higher proportionately than from the more southern points of shipment. This discrimination was dictated by the selfish interests of the railroads which enjoyed a monopoly of the favored shipments; and (4) the rates as established were fixed at what was found under ample evidence to be fair and reasonable, and reparation was awarded for the excess of the old excessive, exorbitant, and oppressive charges."

■ We concur in what is said in the above quotation, and in the absence of a clear showing that an unlawful or improper element entered into the calculation of the commission in reaching the determination of reasonable rates, we cannot assume —much less say—that the mere fact the rate prescribed as applicable to central territory was slightly higher than that to eastern territory, invalidates the commission's order. Whether a case concerns simply the reasonableness of a rate or whether it involves an order awarding reparation, we think it clear that no argument can prevail on the ground that the commission has not fixed the same rate for services of a substantially identical character. Granted that the rates on clay from the south to central and to eastern territories might have been made the same, we think the mere fact that one has been made less than the other does not necessarily indicate that either is unreasonable. Interstate Commerce Comm. v. Union P. R. Co., 222 U.S. 541, 551, 32 S.Ct. 108, 56 L.Ed. 308. Nor do we think there is any necessary inconsistency in the commission's determination, for the report itself shows that in the respects criticized it conforms to the common practice of the railroads themselves in rate-making. And we may point out in this connection that although appellants make some such contentions in their briefs they did not aver in their answer that the rate which the commission fixed as the maximum reasonable rate for clay shipments to eastern territory was intrinsically unreasonable. Instead they merely averred that the rate to eastern

territory was not the same as the rate to central territory and that no evidence before the commission justified the difference. What we have said indicates that the bare difference averred proves nothing.

■ Nor do we think there is any point in the objection that the reports and orders do not contain findings of fact sufficient to sustain an award of damages. The point is not new and was disposed of in Meeker v. Lehigh Valley R. Co., 236 U.S. 412, 35 S.Ct. 328, 334, 59 L.Ed. 644, Ann.Cas. 1916B, 691. In that case the Supreme Court, in answering a like contention, said:

"The arguments advanced to sustain this objection proceed upon the theory that the statute requires that the reports, if not the orders, shall state the evidential rather than the ultimate facts; that is to say, the primary facts from which, through a process of reasoning and inference, the ultimate facts may be determined. We think this is not the right view of the statute, and that what it requires is a finding of the ultimate facts,—a finding which, as applied to the present case, would disclose (1) the relation of the parties as shipper and carrier in interstate commerce; (2) the character and amount of the traffic out of which the claims arose; (3) the rates paid by the shipper for the service rendered and whether they were according to the established tariff; (4) whether and in what way unjust discrimination was practised against the shipper from November 1, 1900, to August 1, 1901; (5) whether, if there was unjust discrimination, the shipper was injured thereby, and, if so, the amount of his damages; (6) whether the rate collected from the shipper from August 1, 1901, to July 17, 1907, was excessive and unreasonable and, if so, what would have been a reasonable rate for the service; and (7) whether, if the rate was excessive and unreasonable, the shipper was injured thereby, and, if so, the amount of his damages."

An examination of the report here shows a fair consideration and decision by the commission of each of these necessary factors. The introduction of the report and orders made out plaintiffs' cases in the absence of anything to the contrary; and in this view we think the decision of the court below was in all respects right and should be and is affirmed.

Affirmed.