**ILLINOIS CENTRAL R. CO., Plaintiff,**

v.

**MIDWESTERN GRAIN COMPANY, Defendant.**

Civ. A. No. 16181–3.

United States District Court
W. D. Missouri, W. D.

Nov. 20, 1969.

Bruce C. Houdek, for James, McCanse & Larison, Kansas City, Mo., for plaintiff.

R. L. Hecker, Robert N. Kroenert, for Morrison, Hecker, Cozad & Morrison, Kansas City, Mo., for defendant.

MEMORANDUM, FINDINGS OF FACT AND CONCLUSIONS OF LAW; JUDGMENT FOR DEFENDANT ON PLAINTIFF'S CLAIM AND FOR PLAINTIFF ON DEFENDANT'S COUNTERCLAIM

BECKER, Chief Judge.

This action was tried by the Court, without a jury, upon the issues made by the complaint, answer, counterclaim and reply. Neither party demanded a jury trial.

In its complaint the plaintiff railroad Carrier ("ICRR" hereinafter) sought recovery of the balance of $10,616.58 on an account alleged to have been incurred by the defendant for freight, and track storage (sometimes erroneously designated as demurrage) charges at Destrehan and New Orleans, Louisiana. Destrehan and New Orleans were the destinations of railroad shipments of various grains and soybeans by the defendant over the lines of ICRR and connecting carriers. Midwestern Grain Company ("Midwestern" hereinafter) shipped various grains and soybeans to Destrehan

from September 23, 1963, to March 31, 1964, and to New Orleans from September 23, 1963, to February 28, 1964. The grain and soybeans were shipped in interstate commerce for export from New Orleans and Destrehan.

ICRR admitted that it had received payment on the account of $62,100.74 for track storage on the Destrehan shipments and of $46,876.70 for track storage on the New Orleans shipments.

The answer of the defendant Midwestern admitted the making of these payments to ICRR but denied that there was any balance owing to ICRR. Further alleging that it had overpaid the account, Midwestern counterclaimed for alleged overpayments for track storage in the total sum of $8,473.14.

The reply of ICRR denied the overpayments.

Pursuant to Local Rule 20 a stipulation of facts and a Standard Pretrial Order No. 2 were filed. The material portions of the Standard Pretrial Order No. 2 are as follows:

"This is an action for certain demurrage charges, which plaintiff, by its petition, claims that defendant owes it with regard to certain shipments of goods and commodities in interstate commerce. The defendant, by its answer, admits the shipments, but denies that there is any demurrage still owing from it to plaintiff. By counterclaim defendant claims that there is in fact on said shipments of goods and commodities and claimed demurrage charges an overpayment by defendant which is due and owing to it from the plaintiff. Plaintiff, by its reply, denies that there is any overpayment due.

\* \* \* \* \* \*

"The following facts are admitted and require no proof:

"1. That the shipments of goods in question were shipped by defendant over plaintiff's line and connecting carriers in interstate commerce.

"2. That the shipments of the various goods and commodities were made by defendant over plaintiff's railway and connecting carriers to the points reflected in the freight bills.

"3. That the goods and commodities were received in good condition at the places and on or about the times shown by the freight bill.

"4. That defendant has paid to plaintiff $62,100.74 for demurrage charges on said shipments generally to Destrehan, Louisiana, and that defendant had paid to plaintiff the amount of $46,876.70 for demurrage charges on these shipments generally to New Orleans, Louisiana.

"5. That the general tariff applicable to the above shipments is Southern Freight Tariff Bureau, Freight Tariff 928, I.C.C. S–256, and all parts and supplements thereto.

\* \* \* \* \* \*

"The following issues of facts, and no other, remain to be litigated upon the trial:

"The only issue of fact, if fact it be, to be litigated is the proper interpretation and application of the admitted tariff to the shipments of goods and commodities."

### Jurisdiction

Jurisdiction to hear and determine the issues exists under Section 1337, Title 28, U.S.C.

### The Applicable Tariff

The parties agreed that applicable tariff was Southern Freight Tariff Bureau Tariff 928, I.C.C. S–256 which in its relevant parts is as follows:

"(a) On Export Flax Seed, Grain or Soybeans for · delivery through the:

Public Elevator, Board of Commissioners of the Port of New Orleans, at New Orleans, La., or

d-Elevator of Continental Grain Company at Westwego, La., or

West-Bank Grain Elevator of Greater Baton Rouge Port

Commission, Baton Rouge or Port Allen, La.

Elevator of Bunge Corporation at Destrehan, La. held in cars at New Orleans, La. (See *Note,* this item) or at Baton Rouge or Port Allen or Destrehan, La., as the case may be, ten (10) days' free time, will be allowed, time to be computed from the first 7:00 A.M. after the day on which notice of arrival at New Orleans, La. (see *Note,* this item) or at Baton Rouge, Port Allen or Destrehan, La., is sent or given to consignee or party entitled to receive same.

"(b) When delivery of a car containing export Flax Seed, Grain or Soybeans cannot be made on account of the inability of the Elevator to receive it, or because of any other condition attributable to the consignee or the Elevator, and it cannot be reasonably accommodated on the tracks of the New Orleans Public Belt Railroad or on tracks of its connecting carriers at New Orleans, La. (see *Note,* this item), when for delivery to the Public Elevator, Board of Commissioners of the Port of New Orleans, at New Orleans, La.; d-or on tracks of inbound road haul carriers at New Orleans, La. (see *Note,* this item), when for delivery to the Elevator of Continental Grain Company at Westwego, La.; or on tracks of carriers at Baton Rouge or Port Allen, La., when for delivery to the West-Bank Grain Elevator of Greater Baton Rouge Port Commission, Baton Rouge or Port Allen, La., or on tracks of carriers at Destrehan, La., when for delivery to the Elevator of Bunge Corporation, it will be held at an available hold point and notice of such holding will be sent or given the consignee or party entitled to receive same; the free time to be computed from the first 7:00 A.M. after such notice is sent or given. The time of movement between the hold point and New Orleans, La. (see *Note,* this item) or between the hold point and Baton Rouge or Port Allen, La., or between the hold point and Destrehan, La., will not be computed against the car.

"(c) *After expiration of ten (10) days' free time, charge for storage will be $3.38 per car per day or fraction thereof, until the car is unloaded, to be collected by the inbound road haul carrier.*

"(d) In computing free time, Saturdays, Sundays and Holidays will be included. After expiration of free time, Saturdays, Sundays and Holidays will be included in computing storage charges.

"(e) This rule applies to all export shipments including shipments consigned locally to the port and declared for export by a written notice to the Local Agent of the inbound road haul carrier within forty-eight (48) hours after arrival of the freight." (Emphasis added)

The parties further agreed that the commodities involved in the shipments were corn, wheat, milo and soybeans.

*The Initial Contentions of the Parties*

The parties further agreed that there were no judicial authorities on the principal question presented in the case by the opposing contentions of the parties. These contentions were as follows:

ICRR contended that the track storage charges should be computed separately for each commodity shipped. (Such separate computations produced a substantially higher track storage total balance owing to ICRR by Midwestern than a statement in which all commodities were included in a single consolidated account, after railroad error was eliminated.)

Midwestern contended that the track storage charges should be computed in a single consolidated account, corrected to deduct from the gross track storage charges the charges resulting from railroad error.

There was no contention that any overcharges which may be established by the evidence are voluntary payments which are not recoverable. Cf. 40 Am. Jur.2d, Payment § 157, pages 820–823.

## The Questions Presented

The parties treated the question presented as limited to the interpretation of the tariff in light of the factual circumstances, including custom and usage of the industries shown by expert opinion. The parties also initially agreed that an interpretation of the tariff would dispose of the controversy.

## Additional Contentions of the Parties

At the initial hearing, however, it developed that there were additional material factual issues on which neither party was prepared to offer evidence. These additional factual issues arose from additional contentions asserted at the initial hearing. These additional contentions were as follows:

ICRR contended that the agents of Midwestern at Destrehan and New Orleans on many occasions gave special directions to ICRR to deliver cars of a certain type of commodity which required ICRR to deliver cars of commodities out of sequence of their receipt at the destination.

Midwestern denied that the claimed special directions occurred or that they would support the monetary claims of ICRR.

When these additional contentions became evident at the original hearing, it was apparent that further evidence would be required to resolve the factual issues raised thereby. To permit the production of the witnesses and documents which may have been involved, an adjourned evidentiary hearing was held, following which the case was submitted.

## The Evidence

The evidence presented was sufficient to indicate that there were occasions on which special directions to deliver at Destrehan and New Orleans cars containing certain types of commodities were given ICRR by Midwestern, but there was no credible proof of the detail of the instructions offered by either party.

Neither party produced contemporaneous records or credible oral testimony of the detail of special instructions for the relevant period. From the evidence it is impossible to make findings in detail concerning any such alleged special instructions. Therefore a correct account cannot be reconstructed from the evidence. In this state of the record the following ultimate findings of fact and conclusions are made.

## Ultimate Findings of Fact and Conclusions of Law

Under the applicable tariff, track storage charges resulting from "railroad error" ("run around" in the slang of the industries) cannot be collected from the shipper. The shipper must be given credit therefor on the gross track storage charges tentatively computed on the basis of the dates of arrival at destination and unloading. "Railroad error" in this case is the delivery (without special request of the shipper) of cars of loaded grain to the tracks or facility used by the shipper for unloading in a sequence other than that in which the cars arrive at (or are constructively placed near) their destination.[1] "Railroad error" does not occur when the delivery of the car to the shipper for unloading out of sequence of arrival is made at the direction (or on request) of the shipper. Any track storage charges resulting from delivery at the direction of the shipper out of sequence of arrival is chargeable to the shipper and may be collected by the railroad.

When a single shipper receives at the destination loaded cars of commodities of several varieties, the applicable tariff does not permit the railroad to render separate statements of track storage charges for each type of commodity. In the absence of special instructions by the shipper, the railroad was obligated

---

1. Because of the bumper crop of grain in the Midwest in the fall of 1963, cars arrived in Louisiana in numbers too great for the available storage tracks. The surplus was "constructively placed" at locations near the designated destination.

to deliver every car to the shipper for unloading in the order that it arrived at the destination regardless of the nature of the commodity shipped therein. Therefore the statement of collectible charges for track storage must be in a single statement of account covering all cars, showing dates of arrival at the destination and of delivery to the shipper, regardless of the types of commodities contained therein. This type of statement is sometimes called a "consolidated statement" by the parties and witnesses. In such a consolidated statement "railroad error" resulting in track storage charges must be accounted for in a credit on the gross track storage charges, tentatively computed on the basis of actual presence of undelivered loaded cars on the railroad's tracks longer than the 10 days permitted under the tariff without charge.

The shipper is not, however, entitled to credit for track storage charges resulting from his special directions for delivery of cars out of the sequence in which they arrive at the destination. For example, if 5 cars of corn arrive at the destination on the first day of a month and 5 cars of milo arrive at the destination on the tenth day of the month, and the shipper requests the 5 cars of milo to be delivered to it for unloading before earlier arriving 5 cars of corn, thereby delaying until the twelfth day of the month, the delivery of the 5 cars of corn, the charges for two days' track storage on each of the 5 cars of corn do not result from "railroad error," but from the shipper's special instructions.

### Ultimate Legal Conclusions

Application of these conclusions to the evidence leads to the following ultimate legal conclusions:

1. The railroad cannot collect tract storage charges from a shipper based upon separate accounts for each commodity. Consolidated accounts for each shipper, regardless of the commodities carried, are required by the applicable tariff.

2. Credit must be given the shippers for track storage charges resulting from "railroad error" in a single computation including all cars of all commodities of a single shipper arriving at a single destination.

3. Where variance in sequence of delivery of cars for unloading is alleged to result from special directions of the shipper, the burden of proving (by a preponderance of the evidence) the existence of the special directions of the shipper is on the railroad.

4. When the shipper has made payments for track storage and thereafter claims an overcharge because of "railroad error," the burden of proving by a preponderance of the evidence that the alleged overcharge resulted from "railroad error", rather than special directions of the shipper, is on the shipper. Cf. Vega Co-operative Creamery Assn. v. Craft, 180 App.Div. 267, 167 N.Y.S. 481.

5. Under the circumstances of this case, ICRR is not required to prove any alleged overpayment was involuntarily made. Ordinarily a party suing to recover an alleged overpayment has not only the burden of proving the overpayment but also the burden of proving that the overpayment was involuntary. 40 Am.Jur.2d, Payment, § 282, page 896; Anno. 64 A.L.R. 9, l. c. 64 and 84 A.L.R. 294, l. c. 296. But this rule is not applicable to overpayments to a regulated common carrier whose rates are fixed by a tariff schedule, filed with and approved by the Interstate Commerce Commission. 13 Am.Jur.2d Carriers, § 125, page 664. In Lewis-Simas-Jones Co. v. Southern Pac. Co., 283 U.S. 654, 51 S.Ct. 592, 75 L.Ed. 1333, l. c. 1337, the court held that the collection by a common carrier of an overcharge is a tort. The national policy to forbid collection of an overcharge obviates the necessity for showing involuntariness in a case like that at bar.

### Ultimate Findings of Fact

1. The evidence in this case on whether the track storage charges (recovery of which is sought in the complaint) resulted from the special directions of the shipper (as distinguished from "railroad error") is so lacking in detail and weight that the plaintiff railroad ICRR has failed to meet the burden of proving by a preponderance of the evidence that the deliveries out of sequence of arrival at the destination (appearing by the agreed summaries) resulted from special directions of Midwestern. Therefore the plaintiff has not proved facts to support the complaint.

2. The evidence in this case on whether or not any alleged overcharge for track storage, voluntarily paid by the defendant, resulted from "railroad error" (as distinguished from special direction of the shipper) is so lacking in detail and weight that the shipper has failed to meet the burden of proving by a preponderance of the evidence to support its counterclaim.

### Taxation of Costs

Because of the failure of either party to prove the right to recover on its claim for relief, the costs of this action should be taxed one-half to each party.

### Judgment

For the foregoing reasons, it is hereby

Ordered and adjudged that that the plaintiff have and recover nothing on its complaint, and that the defendant be, and it is hereby, discharged from liability by reason thereof. It is further

Ordered and adjudged that the defendant have and recover nothing on its counterclaim, and that the plaintiff be, and it is hereby, discharged from liability by reason thereof. It is further

Ordered that the costs of this action be taxed one-half to the plaintiff and one-half to the defendant.