BUCKINGHAM TRANSPORTATION CO. OF COLORADO, Inc., Appellant, v. BLACK HILLS TRANSPORTATION CO., et al, Respondents

(281 N. W. 94.)

(File No. 8181. Opinion filed August 13, 1938.)

*Thorson & McCullen,* of Rapid City, and *Stinchfield, Mackall, Crounse, McNally & Moore* and *Clyde W. Fiddes,* all of Minneapolis, Minn., for Appellant.

*George E. Flavin* and *James W. Bellamy,* both of Rapid City, for Respondent Black Hills Transp. Co.

*Churchill & Benson,* of Huron, and *P. F. Gault,* of Chicago, Ill., for Respondent Chicago & N. W. R. Co.

*Fuller & Campbell,* of Aberdeen, for Respondent, Chicago M., St. P. & P. R. Co.

*Clair Roddewig,* Atty Gen., and *Herman Bode,* Asst. Atty. Gen., for Respondents Board of R. R. Commissioners of State of South Dakota, and Attorney General of South Dakota.

SMITH, J. The question presented is whether the transportation of merchandise to its ultimate destination within the state by motor carrier following immediately upon its carriage into the state by rail in a pool car is interstate or intrastate in character.

As the result of the sale of merchandise by manufacturers, wholesalers, and jobbers, located at Omaha, Nebraska, and beyond, to purchasers located at various points in the Black Hills area of South Dakota, there is a constant flow of such merchandise between Nebraska and South Dakota. Much of this flow of merchandise is made up of less than car load lots. The Gordon Storage Warehouse Company, Inc., of Omaha, Nebraska, hereinafter referred to as "Gordon" and the Wilson Forwarding Company with offices at Omaha, Nebraska, undertake to provide transportation for these lots of merchandise from the place of business of the vendors to the door of the purchaser in South Dakota. As compensation for this service, and to reimburse themselves for their disbursements in procuring such transportation, they make a single charge to their principals. Both companies are mentioned because of a practice which has grown up between them of combining

their shipments, although the controversy here deals only with that portion of the merchandise handled by Gordon. As the goods are prepared for shipment, the owners thereof stencil the name of the purchaser-consignee upon each separate parcel. They then make out a shipping order and deliver the parcels to Gordon. That company thereupon makes out a separate expense bill for each lot of merchandise, showing the consignor, consignee, destinaton, weght, charge, etc., and makes out and forwards a general manifest showing similar information with reference to all of the lots of merchandise to be shipped together. The goods are then placed in a pool car which is moved by railroad from Omaha, Nebraska, to Rapid City, South Dakota, under a single bill of lading and freight bill in which Gordon is named as consignor and either the appellant herein, the Buckingham Transportation Company of Colorado, Inc., hereinafter referred to as "Buckingham," or the Wilson Forwarding Company, is named as consignee. At Rapid City that portion of the merchandise collected by Gordon is delivered to Buckingham and is by that company straightway delivered by trucks to the several purchasers at such other South Dakota points located in the Black Hills area as are included within its interstate routing.

Buckingham holds a certificate from the Interstate Commerce Commission, authorizing it to operate as a common carrier by motor vehicle in the course of interstate commerce over certain South Dakota highways. It does not hold a certificate from the South Dakota Railroad Commission permitting it to operate as such a carrier of intrastate commerce.

Upon complaint filed by the Black Hills Transportation Company, a duly authorized motor carrier of intrastate commerce, the South Dakota Railroad Commission ordered Buckingham to cease and desist from transporting to other South Dakota destinations goods so transported to Rapid City in a pool car. Upon appeal to the Circuit Court the order of the Railroad Commission was affirmed. The proceeding is now before us under an appeal from the judgment of the Circuit Court.

▮ The issue arises because of opposing views as to the character of the transportation. It is not claimed that the South Dakota Railroad Commission has power to exclude appellant from interstate traffic. Cf. Allen et al. v. Galveston Truck Line Corp-

oration, 289 U. S. 708, 53 S. Ct. 694, 77 L. Ed. 1463; Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A.L.R. 286; Bush & Sons Company v. Maloy et al., 267 U. S. 317, 45 S. Ct. 326, 69 L. Ed. 627. It is asserted by appellant that the transportation from Rapid City to other South Dakota points by motor carrier is interstate in character and that the order of the South Dakota Railroad Commission constitutes a burden upon interstate commerce and that it is without power to act in the premises.

■ The essential character of transportation classifies it either as interstate or intrastate. It is the intention formed prior to shipment, pursuant to which property is carried to a selected destination by a continuous or unified movement, which fixes its essential character. When the intention which produces the movement is known, the incidents of the transportation become insignificant and need not be considered in determining whether the transportation is of the one order or the other. U. S. v. Erie Railroad Co., 280 U. S. 98, 50 S. Ct. 51, 74 L. Ed. 187; Hughes Bros. Timber Co. v. Minnesota, 272 U. S. 469, 47 S. Ct. 170, 71 L. Ed. 359; Baltimore & O. S. W. Railroad Co. v. Settle, 260 U. S. 166, 43 S. Ct. 28, 67 L. Ed. 189; Western Oil Refining Co. v. Lipscomb, 244 U. S. 346, 37 S. Ct. 623, 61 L. Ed. 1181; Texas & N. O. Railroad Company v. Sabine Tram Co., 227 U. S. 111, 33 S. Ct. 229, 57 L. Ed. 442; Cott v. Erie Railway Co. et al., 231 N. Y. 67, 131 N. E. 737; Cf. Annotation, 74 L. Ed. 187.

■ These principles are recognized by respondents, but we are told that they do not apply to the case at bar. It is admitted that the owners of the goods intend to move them from Omaha across state lines to the purchasers located at various points in South Dakota beyond Rapid City. It must be admitted that this intention is common to the owners and their agent, Gordon. The engagements of both the owners and Gordon require that the goods be forthwith delivered to their ultimate destinations. However, it is stoutly maintained that the ensuing transportation is not intended to be continuous and is not in fact continuous, but is necessarily accomplished by separate and independent movements. This view is largely predicated upon claimed lack of identity between the pool car as a shipment on the one hand and the individual shipments out bound from Rapid City on the other. It is said: "The fundamental nature of the movement of the pool car, be-

cause of the legal requirements of its contract of shipment (one consignor, one consignee, one bill of lading, and one freight bill), and because of its identity as a 'car shipment,' must cease at the break-bulk point, and completely lose its identity, both practically and legally, before the subsequent distribution can take place. Because of the foregoing essential character of the railroad pool car shipment, there can be no 'essential continuity of shipment' comprising the pool car shipment with delivery taken at a break-bulk point plus distribution by individual shipments of the merchandise." We are convinced that the contention is untenable. If it be admitted, as it must be, that the owners and the forwarder adopt this method or system of dealing in order to secure the advantage of the pool car rate, it does not follow that the unity of the transportation from the point of origin to the points of ultimate destination is broken. If that which is done is in performance of a pre-conceived and pre-announced intention to move property to the selected destinations, the essential continuity or unity of transportation will not be destroyed by a multiplication of carriers and contracts, by changes in form or mode of transportation, by a re-billing or a re-shipping, or by any cessation of movement incidental to a mere change in form or mode of transportation. Hughes Bros. Timber Co. v. Minnesota, Baltimore & O. S. W. Railroad Co. v. Settle, Western Oil Refining Co. v. Lipscomb, and Cott v. Erie Railway Company et al., supra. Neither the use of the pool car nor any other single operation described in this record constitute an end in themselves. Every such operation is indulged in as a means to the accomplishment of the controlling purpose which gives birth to the transportation. Without the intention to move odd lots of merchandise across state lines through Rapid City to the several ultimate destinations, there never will be a pool car of freight Notwithstanding the use of the pool car as a container, there never is a moment when the separate lots of merchandise lose their identity as such, nor is there a second of time when there is any uncertainty as to the destination towards which each lot of merchandise is moving. To say that the two legs of the transportation are independent is to close one's eyes to the body of intention to which those legs are appended.

This contention of the respondents is pregnant with an unexpressed contention that has been rejected by the United States

Supreme Court. In ultimate effect the contention says that a single shipper or a group of shippers intent upon the transportation of property to selected destinations may combine and exercise a choice as to whether they will move such property the entire distance in the course of interstate commerce, or partly in the course of that commerce and the remainder of the distance in the course of domestic commerce. Speaking for the court, the late Mr. Justice McKenna said: "It was to supply the demand of foreign countries that the lumber was purchased, manufactured, and shipped, and to give it a various character by the steps in its transportation would be extremely artificial. Once admit the principle and means will be afforded of evading the national control of foreign commerce from points in the interior of a state." Texas & N. O. Railroad Company v. Sabine Tram Co., supra.

As supporting authority for their contention respondents direct our atention to a group of cases wherein it has been adjudicated that an intrastate movement may follow an interstate shipment of goods. Atlantic Coast Line Railroad Company v. Standard Oil Company of Kentucky, 275 U. S. 257, 48 S. Ct. 107, 72 L. Ed. 270; Chicago, Milwaukee & St. Paul Railway Company v. State of Iowa, 233 U. S. 334, 34 S. Ct. 592, 58 L. Ed. 988; Atlantic Coast Line Railroad Company v. Standard Oil Company of New Jersey, 4th Cir., 12 F. 2d 541, 60 A. L. R. 1456. A careful reading of those cases, however, discloses that the shipments there dealt with were not in fact produced in response to a "single exercise of will." The reshipment in each instance was in response to an independent intention formed subsequent to the original shipment. In cases such as Atlantic Coast Line Railroad Company v. Standard Oil Company of Kentucky and Atlantic Coast Line Railroad Company v. Standard Oil Company of New Jersey, supra, a further distinction is involved in that the merchandise becomes a part of the stock in trade of a domestic business at the end of the interstate movement and the re-shipment is in the course of the operations of a purely domestic business. That such cases are distinguishable from the case at bar has been authoritatively determined. In the case of Baltimore & O. S. W. Railroad Company v. Settle, supra, in speaking of cases of this type, it was said: "The instances are many where a local shipment follows quickly upon an interstate shipment and yet is not to be deemed

part of it, even though some further shipment was contemplated when the original movement began. * * * The distinction is clear between cases of that character and the one at bar, where the essential nature of the traffic as a through movement to the point of ultimate destination is shown by the original and persisting intention of the shippers which was carried out."

 We are convinced that the movement by the motor carrier outbound from Rapid City and that by pool car to Rapid City are but parts of a continuous interstate transportation, and therefore the judgment is reversed and the trial court is directed to remand the cause to the Railroad Commission with directions that the complaint be dismissed upon its merits.

ROBERTS, P. J., and POLLEY and WARREN, JJ., concur.
RUDOLPH, J., did not sit.