STATE OF IOWA, appellee, v. WESTERN TRANSPORTATION COM-
PANY, appellant.

No. 47616.

(Reported in 43 N.W.2d 739)

AUGUST 1, 1950.

Carroll F. Johnson, of Clinton, and Eugene L. Cohn, of Chicago, Illinois, for appellant.

Robert L. Larson, Attorney General, Kent Emery, Assistant Attorney General, John W. Carlsen, County Attorney, and John McCarthy, Assistant County Attorney, for appellee.

.GARFIELD, C.J.—An officer of the state motor vehicle department filed in the municipal court of the city of Clinton an information accusing defendant, Western Transportation Company, of a misdemeanor in violating section 321.54, Code, 1946, by operating a motor vehicle within this state for the intrastate transportation of property for compensation without registering such vehicle and paying the required fee. Defendant's manager appeared without counsel, the facts were stipulated, the court found defendant guilty and imposed a fine of $100 and costs. Defendant has appealed.

It was stipulated that on July 13, 1949, a truck driver employed by defendant drove one of its tractors, registered in Illinois, to the DuPont plant within the industrial limits of Clinton, Iowa, and transported a semitrailer, also registered in Illinois, containing merchandise consigned to a point in Chicago, Illinois, to defendant's dock located in Clinton. The tractor was then disengaged and another tractor belonging to defendant transported the semitrailer to the consignee in Chicago.

It seems also to be agreed, although the stipulation does not so state, defendant is a nonresident owner of foreign vehicles operated within this state for compensation and neither tractor nor semitrailer was registered in Iowa nor a fee paid therefor.

Code section 321.54 provides: "Nonresident carriers. Nonresident owners of foreign vehicles operated within this state for the intrastate transportation of persons or property for com-

pensation * * * shall register each such vehicle and pay the same fees therefor as is required with reference to like vehicles owned by residents of this state."

Section 321.482 makes violation of the quoted provision a misdemeanor punishable by fine of not more than $100 or imprisonment for not more than thirty days.

Defendant contends the stipulated facts do not show it engaged in "intrastate transportation" of property in violation of 321.54 but that the transportation was interstate. The State concedes the shipment in question was one in interstate commerce but says there is a difference between commerce and transportation and insists defendant engaged in intrastate transportation in carrying the merchandise between the DuPont plant and defendant's dock in Clinton.

"Transportation" is defined by Webster's New International Dictionary, Second Ed., and in substance by the decisions generally as "Act of transporting, or state of being transported; carriage; removal * * *." See 42 Words and Phrases, Perm. Ed., 359 ff. Webster defines "intra" as "within." Hence "intrastate" means within the state. 48 C. J. S., page 751. "Intrastate transportation" is therefore carriage within the state.

Intrastate transportation is usually distinguished from interstate transportation. "Inter" is defined as "between" or "among." "Interstate" means "Between places or persons in different states; between two or more states." 48 C. J. S., page 116. Hence "interstate transportation" is carriage between two or more states.

As the State suggests, "transportation" and "commerce" are not necessarily interchangeable. Commerce is the broader term. It means intercourse and is not limited to transportation which is a part of commerce. Commerce includes phases of intercourse other than transportation. See 42 Words and Phrases, Perm. Ed., 363, 364; id., Vol. 7, page 788; 15 C. J. S., Commerce, section 1; 11 Am. Jur., Commerce, sections 3, 4. See also Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 558, 36 S. Ct. 188, 60 L. Ed. 436, 438, L. R. A. 1916C 797.

The merchandise loaded at the DuPont plant in or near Clinton was of course transported by defendant between the

plant and its dock in Clinton. Such transportation was either intrastate or interstate. It could not be both. Unless it appears from the stipulated facts it was intrastate transportation within the meaning of section 321.54, quoted above, defendant is entitled to a reversal. The State does not contend the portion of the movement between defendant's dock in Clinton and Chicago was intrastate. Nor does it argue that any part of the trip would be intrastate if it were not for the stop at the dock in Clinton and the change of tractors there.

■ We think the stipulated facts insufficient proof that defendant engaged in intrastate transportation of property between the DuPont plant and defendant's dock in Clinton.

■ Whether transportation is interstate or intrastate is determined by its essential character from a consideration of all pertinent circumstances. Probably the most important test —some authorities say it is controlling—is the intention of the parties in respect thereto and the manner of carrying out such intention. Mere intent by the owner to make an interstate shipment or preparatory gathering of goods at a depot for that purpose is not sufficient to constitute interstate transportation. It must appear that goods have entered upon transportation to another state or have been delivered to a carrier for that purpose. See Hughes Bros. Timber Co. v. State of Minnesota, 272 U. S. 469, 474, 475, 47 S. Ct. 170, 71 L. Ed. 359, 361, 362; Champlain Realty Co. v. City of Brattleboro, 260 U. S. 366, 43 S. Ct. 146, 67 L. Ed. 309, 25 A. L. R. 1195, and annotation 1201; Baltimore & O. S. W. R. Co. v. Settle, 260 U. S. 166, 43 S. Ct. 28, 67 L. Ed. 189; Texas & N. O. R. Co. v. Sabine Tram Co., 227 U. S. 111, 33 S. Ct. 229, 57 L. Ed. 442; Railroad Commission of Ohio v. Worthington, 225 U. S. 101, 32 S. Ct. 653, 56 L. Ed. 1004; 11 Am. Jur., Commerce, section 70.

■ It is settled by numerous decisions that a shipment is not divested of its interstate character by a temporary break in the transportation at an intermediate point to serve some necessity or convenience of the carrier. Change in the method of transportation, as from rail to boat, or in identity of the carriers, or rebilling from intermediate points does not destroy its interstate character. Such circumstances are mere incidents or "accidents" of the transportation that do not change its essential

character. See authorities last above, also United States v. Erie R. Co., 280 U. S. 98, 50 S. Ct. 51, 74 L. Ed. 187, and annotation 187; Western Oil Refining Co. v. Lipscomb, 244 U. S. 346, 37 S. Ct. 623, 61 L. Ed. 1181; Buckingham Transp. Co. v. Black Hills Transp. Co., 66 S. D. 230, 281 N.W. 94; 15 C. J. S., Commerce, section 25; 11 Am. Jur., Commerce, section 71.

Courts have frequently gone further in sustaining the interstate character of transportation than defendant asks of us here. We will notice a few of these decisions. In Railroad Commission of Ohio v. Worthington, supra, 225 U. S. 101, 108, 32 S. Ct. 653, 656, 56 L. Ed. 1004, 1008, coal was carried by rail from Ohio mines to lake ports in that state, there placed upon vessels and carried to upper lake ports outside the state. The carriage by rail was held to be interstate and not subject to rates fixed by the state railroad commission. The opinion says, "By every fair test the transportation of this coal from the mine to the upper lake ports is an interstate carriage, intended by the parties to be such * * *."

Texas & N. O. R. Co. v. Sabine Tram Co., supra, 227 U. S. 111, 126, 33 S. Ct. 229, 234, 57 L. Ed. 442, 448, considers shipments of lumber from a mill in interior Texas over two railroads on local bills of lading to a point on the Gulf in the same state, destined for export to a foreign port, although the particular destination of any definite part of the lumber had not been fixed. The court holds the shipments by rail were interstate. The opinion states, "The determining circumstance is that the shipment of the lumber to Sabine was but a step in its transportation to its real and ultimate destination in foreign countries. In other words, the essential character of the commerce, not its mere accidents, should determine."

In Western Oil Refining Co. v. Lipscomb, supra, 244 U. S. 346, 350, 37 S. Ct. 623, 625, 61 L. Ed. 1181, 1184, plaintiff had an oil refinery in Illinois and a barrel factory in Indiana. To fill orders for its products in Tennessee it shipped two cars to Columbia, Tennessee, where the orders from that place were filled and then the cars were rebilled to Mt. Pleasant, Tennessee, where the orders from there were filled. The entire movement from Illinois and Indiana to Mt. Pleasant, Tennessee, was held to be interstate. We quote from the opinion:

"Certainly the transportation of the merchandise destined to Mount Pleasant was not completed when it reached Columbia; nor was the continuity of its movement broken by its temporary stop at that place. As to that merchandise the journey to Columbia and the journey from there to Mount Pleasant were not independent, each of the other, but in fact and in legal contemplation were connected parts of a continuing interstate movement to the latter place."

In Hughes Bros. Timber Co. v. State of Minnesota, supra, 272 U. S. 469, 474, 475, 47 S. Ct. 170, 172, 71 L. Ed. 359, 361, 362, logs were floated down the Swamp River into the Pigeon River and delivered on board ships at the mouth of the Pigeon River. The court holds the entire movement was interstate in character. The opinion states:

"The change in the method of transportation by floating to carriage on a vessel did not affect the continuity of the interstate passage, if such a passage was intended by the parties and had begun * * *.

"The drive in the two rivers * * * was not gathering the logs for subsequent interstate shipment; it was the interstate movement itself. * * * The delays in the continuity of movement were only incidental to the journey * * *."

In United States v. Erie R. Co., supra, 280 U. S. 98, 50 S. Ct. 51, 74 L. Ed. 187, wood pulp was imported through Hoboken, New Jersey, and shipped from there by rail to another point in New Jersey, under a new, local bill of lading. It was held the rail movement in New Jersey was not intrastate but an integral part of foreign commerce.

In United States v. Capital Transit Co., 325 U. S. 357, 363, 65 S. Ct. 1176, 1179, 89 L. Ed. 1663, 1669, government employees in Washington, D. C., worked in Virginia and traveled to and from work by bus or streetcar between their homes and the terminal in Washington and by another bus between that terminal and Virginia. The court holds the entire trip was interstate. The opinion says:

"Their interstate journey to work actually began at the time they boarded a Transit bus or streetcar near their home, and actually ended when they alighted from the Virginia-going

bus at their place of work. On returning from work their interstate journey actually began when they boarded a bus near their work and actually ended when they alighted from a Transit streetcar or bus near their home. True, their interstate trip was broken at the District terminii of the Virginia buses, when they stepped from one vehicle to another. But in the commonly accepted sense of the transportation concept, their entire trip was interstate."

United States v. Yellow Cab Co., 332 U. S. 218, 228, 229, 67 S. Ct. 1560, 1566, 91 L. Ed. 2010, 2019, holds the transfer of interstate passengers between railroad stations in Chicago by Parmelee limousines is an interstate movement. We quote from the opinion:

"When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within boundaries of one state does not make that portion of the trip any less interstate in character. * * * That portion must be viewed in its relation to the entire journey rather than in isolation. So viewed, it is an integral step in the interstate movement."

Buckingham Transp. Co. v. Black Hills Transp. Co., supra, 66 S. D. 230, 234, 236, 281 N.W. 94, 96, 97, holds the transportation of merchandise by motor carrier to its ultimate destination within the state following its carriage into the state in a railroad pool car is interstate—both movements are parts of a continuous transportation. The opinion states:

"If that which is done is in performance of a pre-conceived and pre-announced intention to move property to the selected destinations, the essential continuity or unity of transportation will not be destroyed by a multiplication of carriers and contracts, by changes in form or mode of transportation, by a re-billing or a re-shipping, or by any cessation of movement incidental to a mere change in form or mode of transportation. [Citations.] * * *

"We are convinced that the movement by the motor carrier outbound from Rapid City and that by pool car to Rapid City are but parts of a continuous interstate transportation * * *."

The meager stipulation of facts upon which this cause was determined is silent as to the intention of the parties. Presumably the DuPont company intended the merchandise to be transported by defendant without delay from its plant in or near Clinton to the consignee in Chicago. The goods were delivered to the carrier for that purpose and started toward their destination. So far as shown (and the State had the burden to prove defendant's guilt), there was no appreciable delay at defendant's dock in Clinton or elsewhere—the goods proceeded on their way as soon as one tractor could be disengaged and another coupled to the semitrailer. There was no storage awaiting shipment at some future time. It does not appear there was any attempt to divert the shipment to some destination in Iowa nor even any reservation by the shipper, consignee or carrier of a right so to do. There is no showing of any fraudulent purpose by defendant or other party.

If, as the State concedes, this shipment was in interstate commerce, it would seem to be for the reason the transportation was interstate. The stipulated facts pertain to no phase of commerce other than transportation.

Other authorities which tend to support our holding include Baer Bros. Mercantile Co. v. Denver & R. G. R. Co., 233 U. S. 479, 34 S. Ct. 641, 58 L. Ed. 1055; Dallum v. Farmers Co-op. Trucking Assn., D. C. Minn., 46 F. Supp. 785; Cott v. Erie R. Co., 231 N. Y. 67, 131 N.E. 737 (Cardozo, J.); Wabash Ry. Co. v. Whitcomb, 94 Ind. App. 190, 154 N.E. 885; Hartzberg v. New York Central R. Co., 181 Misc. 129, 41 N. Y. S.2d 345, 350; annotations 60 A. L. R. 1465 and 155 A. L. R. 936 on "Breaking continuity of passage or shipment as affecting its interstate character."

See also Rhodes v. State of Iowa, 170 U. S. 412, 18 S. Ct. 664, 42 L. Ed. 1088; Commonwealth v. People's Express Co., 201 Mass. 564, 88 N.E. 420, 131 Am. St. Rep. 416; Commonwealth v. Scott, 141 Ky. 702, 133 S.W. 766; American Express Co. v. Miller, 104 Miss. 247, 61 So. 306, 45 L. R. A., N. S., 120.—Reversed.

All JUSTICES concur.